HESTER v. EAST TENNESSEE & W. N. C. R. CO.

(Circuit Court of Appeals, Fourth Circuit. December 5, 1918.)

No. 1659.

1. COMMERCE ⬅27(7)—EMPLOYERS' LIABILITY ACT—EMPLOYMENT IN "INTERSTATE COMMERCE."

A brakeman, killed while on a train of empty hopper cars being moved by a switch engine to another point within the same state, their destination, however, being a further point in another state, to which they were taken the next day for loading with ore, *held* to have been employed in interstate commerce.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

2. COMMERCE ⬅27(6)—INTERSTATE COMMERCE—MOVING EMPTY CARS.

The hauling of empty cars from one state to another is interstate commerce.

3. COMMERCE ⬅27(6)—INTERSTATE COMMERCE—INTERSTATE TRAIN.

The presence of interstate cars in a train makes it an interstate train.

In Error to the District Court of the United States for the Western District of North Carolina, at Asheville; James E. Boyd, Judge.

Action at law by Odie Hester, administratrix of Charlie Hester, deceased, against the East Tennessee & Western North Carolina Railroad Company. Judgment for defendant, and plaintiff brings error. Reversed.

Mark W. Brown, of Asheville, N. C. (J. W. Ragland, of Newland, N. C., and Thomas A. Jones, of Asheville, N. C., on the brief), for plaintiff in error.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

A. Hall Johnston, of Asheville, N. C., and John W. Price, of Washington, D. C. (James H. Epps, of Jonesboro, Tenn., and Price & Dulaney, of Washington, D. C., on the brief), for defendant in error.

Before KNAPP and WOODS, Circuit Judges, and ROSE, District Judge.

KNAPP, Circuit Judge. [1] Plaintiff in error, plaintiff below, brought this action under the federal Employer's Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [Comp. St. §§ 8657–8665]) to recover damages for the death of her husband, Charlie Hester, who was killed while in defendant's service in February, 1915. Upon the evidence adduced in her behalf the trial court directed a verdict for defendant, on the ground that Hester was not engaged in interstate commerce when he lost his life, and the correctness of that ruling is the only question to be decided.

Defendant operates a narrow gauge railroad running easterly from Johnson City, Tenn., to Cranberry, N. C., a distance of 34 miles. From Cranberry an affiliated road, known as the Linville River Railway, extends to Shulls Mills, N. C., a further distance of 24 miles. The only outlet for these lines is Johnson City, where connection is made with the Southern Railway and with the Carolina, Clinchfield, & Ohio. A third rail has been laid from Johnson City to Elizabethton, Tenn., about 10 miles, and standard gauge cars can be transported to and from that point. At Cranberry there is a large output of iron ore, which moves in "hopper" cars to Watauga Point, near Johnson City, where a smelting furnace is located.

Hester was a brakeman and one of the crew which operated a switch engine in the yard at Johnson City. On the day of the accident the regular freight train is said to have been "off"—that is, not running—and this switching crew was called upon to move a number of cars with a switch engine to Blevins, Tenn., some 20 miles distant. They started out with 16 empty narrow gauge cars, and one standard gauge car, which was dropped at Elizabethton. Among the 16 cars were several hopper cars at the front end of the train. The switch engine was running backwards, and Hester had been sitting on the pilot beam facing the first car. Shortly before reaching Blevins he in some manner and from some cause fell from the engine under the cars, receiving the injuries from which he died not long afterwards. In order to get him quickly to a doctor, the rear cars were left at Blevins, and the engine with 6 or 7 hopper cars went on a few miles further to Roan Mountain, Tenn., near the North Carolina border. Six of these cars were taken to Cranberry the following morning by an engine and crew of the Linville Valley road, which came to Roan Mountain for that purpose, and the same 6 cars were loaded with ore at Cranberry and hauled back to Watauga Point within the next three or four days. In short, the testimony indicates that there was a regular and frequent movement of empty hopper cars to Cranberry and their return loaded to the smelter. It also appears that when the regular train was "off," as at the time in question, it was usual for defendant's switch engine to haul empty hoppers and other cars to

Blevins, and from there the Linville Valley would take them to Cranberry and points beyond in North Carolina.

[2, 3] It is enough to say of these and other facts of record that in our opinion they fully warrant the inference, if they do not conclusively show, that defendant and Hester were both engaged in interstate commerce when he met his death. The recited circumstances tend strongly to refute the contention that Blevins was in any sense the destination of the hopper cars hauled in the fatal train. It was customary to take empty hoppers to Cranberry, and there was no traffic at Blevins or other Tennessee point for which such cars were required. The employés of defendant could not have supposed that the hopper cars in question were to be moved only to Blevins, but must have understood that they were destined for Cranberry, where in fact they were taken almost directly. In a word, the evidence justifies a finding that the movement of the train on which Hester was killed was an interstate movement, because it carried cars which, as defendant well knew, were going through to Cranberry, N. C. The hauling of empty cars from one state to another is interstate commerce. N. C. R. Co. v. Zachary, 232 U. S. 248, 259, 34 Sup. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159. The presence of interstate cars in a train makes it an interstate train. Southern Ry. Co. v. United States, 222 U. S. 20, 32 Sup. Ct. 2, 56 L. Ed. 72. It is not needful to expand the argument. Upon the question here considered we deem it clear that a case was made for submission to the jury, and it was therefore error to direct a verdict for defendant. Pederson v. D., L. & W. R. Co., 229 U. S. 151, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153; St. L. & San Francisco Ry. Co. v. Seale, 229 U. S. 156, 33 Sup. Ct. 651, 57 L. Ed. 1129. Ann. Cas. 1914C, 156; N. Y. C. & H. R. R. Co. v. Carr, 238 U. S. 261, 35 Sup. Ct. 780, 59 L. Ed. 1298; Chicago, R. I. & P. Ry. Co. v. Wright, 239 U. S. 548, 36 Sup. Ct. 185, 60 L. Ed. 431; Louisville & Nashville R. Co. v. Parker, 242 U. S. 13, 37 Sup. Ct. 4, 61 L. Ed. 119.

In this brief review we have referred only to such facts as bear upon the question now before us, but it may not be improper to add that in our judgment the questions of defendant's negligence and Hester's assumption of risk were also questions for the jury.

Reversed.