## DELAWARE, L. & W. R. CO. v. PECK.

(Circuit Court of Appeals, Second Circuit.   December 11, 1918.)

No. 16.

1. **COMMERCE** ⊛27(7)—**INJURY IN "INTERSTATE COMMERCE."**
   Employé, in a local switching crew at station in New Jersey, injured while setting brake on open coal car being switched between sidings, car having come from Pennsylvania consigned to company in New Jersey, *held* not engaged in "interstate commerce," to bring his case within federal Safety Appliance Act (Comp. St. § 8605 et seq.).
   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

2. **COURTS** ⊛489(9½)—**MASTER AND SERVANT** ⊛351, 396—**INJURIES TO RAILROAD SERVANT—FEDERAL SAFETY APPLIANCE ACT—WORKMEN'S COMPENSATION ACT.**
   Member of railroad's local switching crew, injured in intrastate commerce in New Jersey, while setting brake on car, *held* entitled to recover against railroad under federal Safety Appliance Act (Comp. St. § 8605 et seq.), not in the federal court under the federal Employers' Liability Act, but only in the court of common pleas of the county of New Jersey which would have jurisdiction in a civil cause, there having been no provision in contract of employment that Workmen's Compensation Act of New Jersey (P. L. 1911, p. 134), as amended by Act N. J. April 1, 1913 (P. L. p. 302), should not apply, and he having given no such notice to railroad before accident.

3. **MASTER AND SERVANT** ⊛111(1)—**FEDERAL SAFETY APPLIANCE ACT—ACTION FOR DAMAGES.**
   Failure to comply with federal act requiring hand brakes (Comp. St. § 8618) renders railroad company liable for injuries to a switchman resulting from such violation, though the only punishment fixed by the statute is a penalty recoverable at the suit of the United States.

In Error to the District Court of the United States for the Southern District of New York.

Action by Richard G. Peck against the Delaware, Lackawanna & Western Railroad Company. To review judgment for plaintiff, defendant brings error. Reversed.

A. J. McMahon and William S. Jenney, both of New York City (Douglas Swift, of New York City, of counsel), for plaintiff in error.
Edwin J. McCrossin and Vine H. Smith, both of New York City, for defendant in error.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge. This is a writ of error to a judgment upon the verdict of a jury in favor of the plaintiff for damages and costs in the sum of $25,057.31, for loss of left hand and of left leg below the knee, sustained by him while in the defendant's employment. The action is brought under the federal Employers' Liability Act (Comp. St. §§ 8657-8665). At the time he sustained the injuries in question the plaintiff was one of the local switching crew at Delawanna Station, N. J., and was setting the brake on an open coal car which was being switched from a siding back of the station known as the "Old Switch" to another siding on the other side of the main tracks known

as the "Hart Siding." The plaintiff alleged that the brake and brake step of the coal car were defective, which made the defendant absolutely liable under the federal Safety Appliance Act (Comp. St. § 8605 et seq.), and also liable under the federal Employers' Liability Act because of the negligence of the engineer in giving the car a violent lurch. We will assume that the plaintiff has established all his charges of negligence.

[1] The first question to be considered is whether the plaintiff was at the time in question engaged in interstate commerce. The car came from Knoxdale, Pa., consigned to the Thomas A. Hart Company at Delawanna. That company was building a highway crossing for the defendant under a contract which required the defendant to transport and deliver to the company all materials to be used in the work, free of freight charges; the company to pay all demurrage charges in accordance with the defendant's rules.

Saturday morning, September 16, 1916, at 5 a. m., the car arrived at Delawanna and was put on a siding known as the "Old Switch." Between 9:30 and 10 a. m. the superintendent of the Hart Company directed the car to be placed at the stub end of that switch, which was done.

On Monday, September 18, the superintendent directed the car to be moved to Hart's Siding and the accident happened while this was being done. These movements were within the yard limits of Delawanna. The Hart Company receipted for the coal September 16 and paid demurrage in accordance with the defendant's rules of one dollar a day after the expiration of 48 hours from 7 a. m. of that date until the car was unloaded. Upon the undisputed facts we think the plaintiff was not engaged in interstate commerce, that the interstate journey had ended at least when the car was placed by the direction of the Hart Company at the stub end of the old switch, and that the judge should have so held as matter of law. All switching thereafter in the yard for the convenience of the consignee was intrastate commerce. This is in accordance with our understanding of the decision of the Supreme Court in Lehigh Valley Railroad Co. y. Barlow, 244 U. S. 183, 37 Sup. Ct. 515, 61 L. Ed. 1070, reversing the decision of the Court of Appeals of the state of New York; Mr. Justice McReynolds saying:

"Basing his claim upon the federal Employers' Liability Act, defendant in error sought damages for personal injuries. The New York Court of Appeals affirmed a judgment in his favor (214 N. Y. 116 [107 N. E. 814]), and the question now presented is whether there is evidence tending to show that he was injured while engaging in interstate commerce. The accident occurred July 27, 1912, when, as member of a switching crew, he was assisting in placing three cars containing supply coal for plaintiff in error on an unloading trestle within its yards at Cortland, N. Y. These cars belonged to it and with their contents had passed over its line from Sayre, Pa. After being received in the Cortland yards—one July 3 and two July 10—they remained there upon sidings and switches until removed to the trestle on the 27th.

"We think their interstate movement terminated before the cars left the sidings, and that while removing them the switching crew was not employed in interstate commerce. The essential facts in Chicago, Burlington & Quincy R. R. Co. v. Harrington, 241 U. S. 177 [36 Sup. Ct. 517, 60 L. Ed. 941], did not materially differ from those now presented. There we sustained a recovery by

an employé, holding he was not engaged in interstate commerce; and that decision is in conflict with the conclusion of the Court of Appeals. The judgment under review must be reversed, and the cause remanded for further proceedings not inconsistent with this opinion."

The plaintiff relies greatly on Penna. v. Donat, 239 U. S. 50, 36 Sup. Ct. 4, 60 L. Ed. 139, which was decided on motion to dismiss or affirm, on authority of New York Central & Hudson River R. R. Co. v. Carr, 238 U. S. 260, 35 Sup. Ct. 780, 59 L. Ed. 1298. The report is very brief, but an examination of the record in the Circuit Court of Appeals discloses that the plaintiff, a yard conductor in charge of a switching crew, was directed to take two interstate cars from a train and place them upon Olds' private switch track connecting with the yard. To do this it was necessary to remove from that switch two empty cars which had been used in interstate commerce. While the plaintiff was arranging for this at 11 o'clock at night, he fell into an unguarded and unlighted hole, and the court left it to the jury to say whether he was, under all the circumstances, engaged at the time in interstate commerce. This was on the principle, stated by Mr. Justice Lamar in the Carr Case, that railroad employés frequently pass on the same day from intra to inter state commerce and vice versa under circumstances under which it is difficult to draw the line. We do not think this applies to the present case.

[2, 3] But it is contended that, even if the plaintiff were engaged in intrastate commerce, the defendant is absolutely liable under the federal Safety Appliance Act, without regard to any question of negligence, because the car was not equipped with an efficient hand brake and proper brake step. This act laid down requirements as to railroad equipment with which all carriers engaged in interstate commerce must comply under the penalty of $100 for each and every violation. Of course, one of the class intended to be protected by the act injured by the failure of a carrier to comply with it is entitled to recover damages (Texas & Pacific Railway Co. v. Rigsby, 241 U. S. 33, 36 Sup. Ct. 482, 60 L. Ed. 874), but not under the federal Employers' Liability Act, unless he were at the time engaged in interstate commerce, which this plaintiff was not.

The plaintiff's employment and injury both took place in the state of New Jersey. His theory is that for injuries resulting from a violation of this act he may recover damages in a common-law action brought wherever he can serve the defendant. But master and servant together constitute a relation or status, which involves many mutual rights and duties not expressed in the specific contract of employment. That contract fixes, among other things, the kind, place, and time of employment, and the compensation. The definition and extent of the relation itself are fixed by the law of the state where it was established, but Congress has written into it, in the case of railroad companies and their employés, this additional feature on which the plaintiff relies. The state of New Jersey has defined the rights and duties of the relation of master and servant by the Workmen's Compensation Act (chapter 95, Laws 1911, as amended by chapter 174, Laws 1913), which we regard as excluding all other jurisdictions.

Section II regulates elective compensation without regard to the negligence of the employer, and subsection 9 provides that every contract of hiring shall be presumed to have been made with reference to section II unless there be an express statement in writing as a part of the contract or by either party to the other prior to any accident that it is not intended to apply. So also either party may terminate the application of section II by giving 60 days' notice in writing to the other before any accident.

The answer sets up this act as a defense, and alleges that there was no provision in the contract that section II should not apply, and that the plaintiff had given no such notice to the defendant before the accident; wherefore he could not maintain the action. At the trial the defendant offered to prove these allegations, but the court refused to permit it, and the defendant excepted. We think this was error. The New Jersey act creates a system to be enforced by the court of common pleas of the county of New Jersey which would have jurisdiction in a civil case. The employé is required to give notice of the injury to the employer within a fixed time. The compensation to be paid for the loss of a leg or of a hand is a fixed proportion of the employé's daily wages for a fixed number of weeks, and this compensation may be commuted by the court of common pleas into one or more lump sums. That court is also to settle, at the request of either of the parties, any dispute about compensation. For these reasons we are of the opinion that the plaintiff cannot maintain this action in the District Court for the Southern District of New York. There are some decisions of the courts of New York to a similar effect. Albanese v. Stewart, 78 Misc. Rep. 581, 138 N. Y. Supp. 942; Lehmann v. Ramo Films, Inc., 92 Misc. Rep. 418, 155 N. Y. Supp. 1032; McCarthy v. McAllister Steamboat Co., 94 Misc. Rep. 692, 158 N. Y. Supp. 563; Verdicchio v. McNab, 178 App. Div. 48, 164 N. Y. Supp. 290.

The judgment is reversed.