[S. F. No. 11470. In Bank.—June 21, 1926.]

GERTRUDE MAPPIN, Administratrix, etc., Respondent, v. THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY (a Corporation), Appellant.

[1] NEGLIGENCE — INJURY TO EMPLOYEE OF INTERSTATE CARRIER — FEDERAL EMPLOYERS' LIABILITY ACT—EVIDENCE—PREPARATION FOR INTERSTATE SHIPMENTS.—In an action in the state court by an employee of an interstate common carrier, under the "Federal Employers' Liability Act," for injuries suffered by the employee while he was acting as engine foreman in charge of a switch crew in the main switchyard of the defendant, evidence showing what was done in the way of loading the cars with freight for interstate shipments on the day following the injuries of the employee was admissible.

[2] ID. — EMPTY CARS — INTERSTATE COMMERCE. — An empty car, of foreign ownership, in a common carrier's freight-yards can regain its quality of being engaged in interstate commerce, first, when it has actually begun its homeward movement in conformity with the rules and customs of the carrier, or, secondly, when it has been definitely designated to receive interstate freight and is immediately on its way to the place within the freight-yard where it is to be loaded with such freight.

[3] ID.—SUFFICIENCY OF EVIDENCE.—It is held in this action that the evidence was sufficient to sustain the implied finding of the jury that at least one of the units of cars during the movement of which the deceased received his injuries was committed to inter-

2.  See 18 R. C. L. 852.

state uses so as to give the entire train the quality of being engaged in interstate commerce at that time.

[4] ID.—DEFENSE—ASSUMPTION OF RISK—BURDEN OF PROOF.—The defense of assumption of risk is one which may be taken advantage of by a defendant carrier where the action is brought under the provisions of the "Federal Employers' Liability Act," but on that issue the burden of proof is upon the employer, and the question is one of fact for the jury; but there is the exception to the rule that when the evidence in the case is clear, direct, and undisputed the question of assumption of risk becomes a question of law for the court.

[5] ID.—SAFE APPLIANCES—PRESUMPTIONS.—An employee is entitled to assume that his employer has furnished him with suitable and safe materials, machinery, and surroundings, and relieved him of investigation and inquiry in that regard, where the performance of his duties requires constant attention to other matters.

(1) 39 C. J., p. 1009, n. 4.    (2) 12 C. J., p. 44, n. 14.    (3) 39 C. J., p. 1044, n. 9.    (4) 39 C. J., p. 689, n. 74, p. 1000, n. 34, p. 1179, n. 75, p. 1182, n. 76.    (5) 39 C. J., p. 987, n. 96.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. E. P. Shortall, Judge. Affirmed.

The facts are stated in the opinion of the court.

E. W. Camp, E. T. Lucey and Platt Kent for Appellant.

J. H. Sapiro and Edwin V. McKenzie for Respondent.

RICHARDS, J.—This appeal is from a judgment of the superior court in and for the city and county of San Francisco in favor of the plaintiff as administratrix of the estate of Walter W. Mappin, deceased, against the defendant for the sum of twenty-five thousand dollars damages arising out of injuries sustained by, and the death therefrom of, said W. W. Mappin, her husband, while an employee of said defendant and through its alleged negligence. The action was commenced and prosecuted in said court under the provisions of the so-called "Federal Employers' Liability Act,"

4.    See 16 Cal. Jur. 1094; 18 R. C. L. 830.
5.    See 16 Cal. Jur. 1069; 18 R. C. L. 689.

which act provides for the enforcement in the state courts
of the liabilities of common carriers for injuries suffered by
their employees while employed by such carriers in inter-
state commerce.    The primary question presented upon this
appeal is as to whether the evidence educed at the trial
of the cause was sufficient to uphold the implied finding of
the jury that the deceased was employed by the defendant
in interstate commerce at the time he received the injuries
which resulted in his death.    The secondary question, as-
suming the first above inquiry to be answered affirmatively,
is as to whether the plaintiff had succeeded in showing a
case of actionable negligence on the part of the defendant
proximately causing the death of the deceased.    There are
certain undisputed facts presented by the pleadings and
evidence in the case which have reference to the primary
inquiry above referred to.    These are as follows: The
defendant Atchison, Topeka and Santa Fe Railway Com-
pany is a corporation and a common carrier engaged in
both interstate and intrastate commerce within the state of
California; and as to the former beyond the boundaries of
said state.    The decedent Walter W. Mappin was on No-
vember 1, 1923, and at the time of his aforesaid injuries
employed by the said defendant in its railroad freight-yards
in the city of San Francisco in the capacity of an engine
foreman in charge of a switch crew in the main switch-
yard of the defendant which is fully equipped with round-
house, track scales, storage facilities, etc., and which adjoins
its freight-house, where all freight shipped from and con-
signed to San Francisco through its facilities is handled.
There are shifts of working crews in this yard, each under
its own foreman, each working eight hours a day, and
handling in all an average of one hundred cars daily.    The
hours of work of the particular crew of which the deceased
was foreman were from 11 o'clock at night until 7 o'clock
the next morning.    It was the duty of this crew to take
up the work of the crew which had preceded it with respect
to the receipt and disposal of cars; and upon this particular
occasion it became the duty of Mappin's crew to deal with
an assemblage of thirteen empty cars which the former
switching crew had placed upon "Track 9" and which were
to be placed in their designated position for loading accord-

ing to the requirements of the following day. These cars had already been selected by the yardmaster from the repair track and various other tracks with reference to their adaptability for such requirements. Some of these empty cars were to be weighed and the first duty apparently of this switching crew was to have this line of cars pulled over No. 9 track and past No. 9 switch for the purpose of backing them down to the scale track where those of them requiring weighing were to be weighed, upon the conclusion of which the several cars were to be switched to their respective places as indicated upon said list. There were in this aggregation of thirteen cars which were thus to be handled that night ten cars which at some time prior thereto had arrived in San Francisco upon the defendant's railway lines carrying merchandise originating as to its transportation in states other than California, while the remainder of said list of cars had come in with loads originating within the state of California. Of the former ten cars three were cars belonging to railroad companies which had no tracks in California. These were a C. B. & Q. car No. 130238, which had been received by the defendant at Denver, Colorado, loaded with interstate freight destined for California points; N. Y. C. car No. 336914, which had been received by the defendant at Streator, Illinois, similarly loaded; R. I. car No. 42217, which had been received by the defendant at Amarillo, Texas, also similarly loaded. Each of these cars had been unloaded prior to November 1, 1923, and had been inspected, cleaned, and repaired so that they were ready for use. These three last-named cars had been given specific switching destinations, viz.: C. B. & Q. car No. 130238 was designated to load lumber, Berth 2; N. Y. C. car No. 336914 was to be spotted for derrick. This designation was explained by the testimony of the yard foreman immediately preceding Mappin on that evening to the effect that this car was to go to the "derrick" in connection with another car, "Santa Fe No. 62219," which was to receive there a specific load; and there was some further evidence that N. Y. C. car No. 336914 thus ordered spotted at the derrick left San Francisco on November 3, 1923, loaded with wrought iron pipe consigned to Las Vegas, New Mexico. R. I. car No. 42217 was designated to be spotted at "Block No. 6." The term

"Block" indicated the place in the freight-house from which shipments of freight were to be loaded upon the cars for specific destinations, and "Block 6" was the place where freight consigned to Arizona was to be loaded on the cars which had been "spotted" at that point. There is evidence that R. I. car No. 42217, placed at that point immediately after the accident to Mappin was, on the following day, loaded at "Block 6" with freight destined for Arizona. There was also offered and received in evidence the rules of the defendant company in conformity with the like rules of the Interstate Commerce Commission to the effect that it was the duty of a railroad carrier receiving foreign cars from a forwarding railroad to return such cars when unloaded at their point of destination to the forwarding railroad at the point where the former received them. This point was designated by a card affixed to the side of the car. There was also evidence of a custom among carriers to place in such cars when thus turned homeward freight consigned to points inside or outside the state of California, provided these shipments of freight were to points of destination along the homeward route of the foreign car.

[1]   With respect to the foregoing evidence, showing what was done in the way of loading these three cars with freight for interstate shipments on the day following the injuries to Mappin, and which evidence was offered and admitted over the defendant's objection, it is urged by the appellant that the trial court was in error in the admission of such evidence. We cannot agree with this contention. In the absence of any showing of a change of purpose as to the immediate destination of these cars within the defendant's freight-yard or of any change of design that they or some of them at least should be presently loaded with freight destined for foreign points along the homeward route of the cars so to be loaded, we are of the opinion that evidence that certain of said cars were so presently loaded with such freight and at such predesignated spotting points was admissible as having an important bearing upon the question as to whether the cars had thus been definitely destined for use in interstate commerce and started on their homeward way in the course of such use prior to Mappin's injuries; and that they were engaged in such use at the time

198 Cal.—47

the latter received such injuries. (*Breske* v. *Minneapolis etc. Ry. Co.*, 115 Minn. 386 [132 N. W. 337].) The case of *Chicago Junction Ry. Co.* v. *Industrial Board, etc.*, 277 Ill. 512 [115 N. E. 647], cited by the appellant upon this point is distinguishable as to its facts both from the last above cited decision and from the case at bar in the respect that prior to and up to and including the time of the injury to the decedent in that case there was no showing of a predestination of the empty cars, which were being switched by his crew, to interstate uses. The appellant, however, contends that even conceding the proper admission of the foregoing evidence, as to the uses to which certain of said cars were put upon the day following the decedent's fatal injuries, the evidence as a whole was insufficient to justify the conclusion arrived at by the jury that the cars or any of them in the train which the deceased was occupied in switching were at the very time of his injuries engaged in interstate commerce so as to give the court jurisdiction of the case under the provisions of the Interstate Commerce Commission Act. In support of this contention the appellant urges that the fact that certain or even all of the cars in question were the cars of foreign carriers having no railroad lines in California, or even that such cars had come into California loaded with interstate freight is entirely immaterial to the present inquiry, since it is a well-established rule of railroad law that a car, whatever its ownership or with whatever sort of freight it is loaded at the time of its entry into California, when once unloaded and either standing empty or being shifted about local freight-yards loses during such time its character as a car engaged in interstate commerce; and that such car does not again regain that character until it has again been definitely put to interstate uses. It may be conceded, for the purposes of this case only, that the authorities cited by the appellant upon this proposition sustain it, but it does not follow that this rule has application to the facts of the case at bar. It is conceded as being fully established by the authorities that if a single car in the train of cars through the movement of which the deceased employee receives his injuries is devoted to interstate commerce it gives its quality to the entire train of cars of which it is

an integral part. [2] There are at least two ways, by either or both of which an empty car, especially if it is of foreign ownership, when it has lost its quality as engaged in interstate commerce by being emptied and remaining in carriers' freight-yards, can regain that quality even before the time when it is actually loaded with interstate freightage. One of these ways is when such car, though empty, has actually begun its homeward movement in conformity with the rules and customs of carriers above referred to. The other is where such car has been definitely designated to receive interstate freight and is immediately on its way to the place within the freight-yards of the carrier where it is to be loaded with such freight. That the question as to whether by one or both of these ways a foreign car, though still in the carrier's freight-yards, has again taken on the quality of a car engaged in interstate commerce is a question of fact for the jury, is established by the authorities hereinafter to be referred to. [3] We are satisfied that the evidence in this case was sufficient to sustain the implied finding of the jury that at least one of the units in the aggregation of empty cars during the course of the movement of which the deceased employee received his fatal injuries was as to both of the particular ways above referred to committed to interstate uses so as to give to the entire train the quality of being engaged in interstate commerce at the moment of the receipt by the decedent of his injuries. We refer to R. I. car No. 42217. This was a foreign car both as to its ownership and as to the place at Amarillo, Texas, at which it had been received, loaded with interstate freight by the defendant herein, and to which, in accordance with both rule and custom, it was to be returned by it. It had been designated as such by a tag on the side of the car. It had been emptied of its original interstate load and was in the freight-yards of the defendant subject to reloading and return to the foreign point at which it had been received. It had been inspected cleaned, repaired, and otherwise prepared for its return to said point. It was not one of the cars which required weighing before being "spotted" for the load which it was to receive upon the following day. It had been selected by the yardmaster for such loading and had been desig-

nated for that purpose. Its designation was to "Block 6" in the freight-house of the defendant, which was the place from which freight destined to Arizona points was to be loaded upon cars. The instructions given to Mappin by his preceding yard foreman a few moments before his injuries indicated that this particular car was to be spotted at or opposite "Block 6"; and that it was so designated and destined for loading on the following morning with that particular kind of freight is sufficiently shown by the corroborating circumstance that it was so identically loaded on the morning of the following day. It was in course of movement to its thus designated place for its thus predesigned purpose when the injuries to Mappin occurred. It is true that there were some cars in the aggregation of empty cars which were to be weighed before being placed at the designated spot for loading, but this was not one of such cars and it cannot therefore be said that it had any such intermediate destination. In other words, so far as R. I. car No. 42217 was concerned it was a foreign car which had been definitely started on its homeward interstate journey and was in an immediate movement to the point in the defendant's freight-yard where it was presently to be loaded with its predestined cargo of interstate freight consigned to Arizona points. Some emphasis is laid by the appellant upon the fact that while R. I. Car No. 42217 was designated to be "spotted" at Block 6, its destination was therein given as Cadiz, California; but this fact loses its significance when it appears from the evidence that "Cadiz" is merely a small way station on the border between California and Arizona, to which practically no freight is consigned, but the name of which is used for convenience as the last California station to indicate the route along which particular cars or trains are to travel on their journey eastward along the defendant's several interstate lines. While there has not heretofore been presented to the courts of California a case involving the foregoing identical facts, such cases have arisen in other jurisdictions and the decisions there handed down are, we think, controlling in the case at bar. The most persuasive of these cases because based upon practically identical facts are the following: *Christy* v. *Wabash R. Co.,* 195 Mo. App. 232 [191 S. W.

243]; *Breske* v. *Minneapolis etc. Ry.*, 115 Minn. 386 [132 N. W. 337]; *Fayssoux* v. *Seaboard S. F. & T. Ry. Co.*, 109 S. C. 352 [96 S. E. 151]; *Hester* v. *East Tennessee etc. Co.*, 254 Fed. 787 [166 C. C. A. 233]; *Kinsella* v. *New York Cent. R. Co.*, 186 App. Div. 856 [175 N. Y. Supp. 363]; *Geer* v. *St. Louis etc. Ry. Co.*, 109 Tex. 36 [194 S. W. 939]; *Aldread* v. *Northern Pacific Ry. Co.*, 93 Wash. 209 [160 Pac. 429]; *Trowbridge* v. *Kansas City & W. B. Ry. Co.*, 192 Mo. App. 52 [179 S. W. 777]. This list of cases might be indefinitely extended were it necessary so to do in order to support and illustrate what we deem to be the well-established rule that the question is, under circumstances similar to those presented by the evidence in the instant case, a question of fact for the jury. The cases cited by the appellant herein touching this subject are, when their facts are considered, easily differentiated from those of the foregoing cases and of the case at bar. This distinction is well illustrated by the case of *Chicago Junction Ry. Co.* v. *Industrial Board*, 277 Ill. 512 [115 N. E. 647], which is one of the cases upon which the appellant herein most strongly relies. In that case the deceased employee was one of a switching crew moving fifteen empty cars from the car shops to the storage tracks in the carrier's freight-yards and was injured in the course of such removal. Eleven of these cars, after the accident, were taken to the storage tracks, re-iced and on the same day moved by another crew to the loading tracks where they were filled with interstate freight. The opinion of the court expressly recites that up to the time of the accident there had been no specific designation given as to where any particular car would ultimately go and the court for that reason held that the cars were not at the time of the decedent's injury engaged in interstate commerce. In so holding the court said: "It has been held that, if the object of a switching movement is the placing of an empty car in a position to receive a load to be carried out of the state the car is engaged in moving interstate commerce from the moment the switching movement begins," citing *Breske* v. *Minneapolis etc. Ry. Co.*, *supra*. This may be said to be a typical case. The jury in the instant case, however, by its finding, implied from its verdict in the plaintiff's favor, has determined from what

we deem sufficient evidence, that the defendant was at the
time of the injuries received by its employee Mappin, and
which caused his death, engaged in interstate commerce so
as to give the trial court jurisdiction over the case before
it. We do not feel justified in disturbing the finding of the
jury in that regard. With respect to the immediate cause
of the decedent Mappin's injuries which resulted in his
death, the facts appear to be that while acting in the ca-
pacity of a switching foreman and engaged in disposing of
the string of empty cars in the manner heretofore indicated
in this opinion, the deceased, while attempting to board
such train of cars, stumbled over a tie supporting a switch
which, according to the plaintiff's claim, had been negli-
gently maintained. We are not presented upon this appeal
with any contention on behalf of the appellant that it was
not negligent in the foregoing regard, the appellant's con-
tention being merely that the decedent must be held to have
assumed, as a matter of law, the risks of his employment,
of which the defective condition of the switching place in
question was one, under the undisputed facts of this case.
[4] It may be stated *in limine* that it is conceded that the
defense of assumption of risk is one of the defenses which
may be taken advantage of by a defendant carrier where
the action is brought under the provisions of the Federal
Employers' Liability Act; but it should also be said that
upon the issue of assumption of risk the burden of proof
is upon the employer (*Kanawha R. Co.* v. *Kerse,* 239 U. S.
576 [60 L. Ed. 448, 36 Sup. Ct. Rep. 174, see, also, Rose's
U. S. Notes]; 18 R. C. L., sec. 126, p. 631; 16 Cal. Jur.,
p. 1079, and cases cited) ; and that as a general rule the
question of assumption of risk is a question of fact for
the jury. (16 Cal. Jur., p. 1080, and cases cited.) The
only exception to this rule is that when the evidence in the
case is clear, direct, and undisputed the question of assump-
tion of risk becomes a question of law for the court. The
appellant herein contends that this case comes clearly within
this exception and recites at length the evidence in the
case upon which it relies in support of its said contention,
from which recital it appears that the particular defect in
the switch and immediate switching place upon which the
decedent stumbled when about to board one of the moving

cars after throwing the switch was that the ties upon which the switch-stand was bolted were sticking above the ground about three inches and that there were rocks and oil about this spot on the ground; that the decedent had been employed in the defendant's freight-yard as a member of its switching crew for a period of about two years prior to the accident which caused his death; that his duties were night duties of the kind he was performing at the time of his injuries; that in the course of these duties it was occasionally his function to throw this particular switch and that he was thereby given a full opportunity to know the condition of this switch and switching place and to be fully informed as to its defective and dangerous state; and that these facts having been shown by undisputed evidence the deceased must be held as a matter of law to have assumed the risk of his employment arising from the known defects and dangers of this particular appliance and place. This might be taken to be true if the foregoing were all of the facts which were by the court or jury to be taken into consideration upon this subject of assumption of risk. What the deceased actually knew as to these defects cannot be known. From the evidence in the case, however, it appears that while the defective condition of this particular switch and switching place was one which had been in existence for a considerable period of time, it was one which was repairable and which it was the continuing duty incumbent upon the defendant to repair. It further appeared from the evidence that it was the general custom in freight-yards to have the tracks ballasted and leveled off even with the tops of the ties and especially the switch ties, and that it was true that this custom had been generally complied with in relation to the numerous switches and switching places in this particular yard and even with relation to this particular switching place as to all of the ties on either side of the switch-stand which, with the exception of the two ties to which the said switch-stand was bolted, were ballasted up even with the top thereof. The reason for this required care in maintaining the ballasting of the ties in the freight-yard even with the top of the ends thereof consisted in the fact that switchmen, especially those working at night were required by the nature of their service to run along the

track over these tie ends in boarding the moving cars during a switching movement, during which the eyes and attention of the switchman must be fixed upon the moving train and the particular car and its appliances which he is to lay hold of in the act of boarding it after throwing the switch. The evidence further shows that the members of a switching crew working thus at night were not assigned to particular switches, but that it was that one of them nearest to any particular switch at the moment whose duty it was to throw it in the course of the train movement. From these added facts and from the further fact that in determining the question of assumption of risk the injured employee will not be presumed to be negligent or to knowingly incur risk or danger of injury, we arrive at the conclusion that the evidence in this case does not so indisputably and clearly show such actual or imputed knowledge on the part of this deceased employee as to the defective and dangerous state of this particular switch and switching place at the time of his injuries as to have required the trial court to determine as a matter of law that he had assumed this particular risk of his employment. We are aided in reaching this conclusion by a consideration of the following cases from our own court touching the application of the doctrine of assumption of risk to situations similar to that presented by the facts of the case at bar: *Kreitzer* v. *Southern Pac. Co.*, 38 Cal. App. 654 [177 Pac. 477]; *Crabbe* v. *Mammoth Channel G. M. Co.*, 168 Cal. 500 [143 Pac. 714]; *Hennessey* v. *Bingham*, 125 Cal. 628 [58 Pac. 200]; *Smith* v. *Occidental etc. Co.*, 99 Cal. 462 [34 Pac. 84]. [5] We are also especially aided in reaching the foregoing conclusion by the case of *Chicago etc. Ry. Co.* v. *Hines*, 132 Ill. 161 [22 Am. St. Rep. 515, 21 N. E. 1021, 1023], which presents a state of facts practically identical with those of the instant case, and wherein in the course of its opinion the supreme court of Illinois makes use of this significant language: "And necessarily, much more is the servant entitled to assume that his master has furnished him with suitable and safe materials, machinery and surroundings, and relieved him of investigation and inquiry in that regard, where, as in the present instance, the performance of his duties requires constancy of

attention to other matters. A man whose attention is constantly directed to moving cars, and their coupling and uncoupling, cannot possibly give much attention to the ties, switchbars, etc., over which he may from time to time have to pass.'' The case of *Chicago etc. Co.* v. *Dinius,* 180 Ind. 612 [103 N. E. 658], is another case wherein the facts are much similar to those of the case at bar, and in discussing which the supreme court of Illinois says: ''The theory of the complaint seems to be that, in a measure, appellee was lulled into a sense of safety of footing by the fact that the tracks, generally, about which he was working were properly ballasted; that the discovery of a defect on the coupling apparatus of the standing car raised an emergency which required him to cross the track in advance of the slowly moving car and so to effect the coupling of that car to the standing one; that, to meet this emergency and make the coupling in the performance of his duty, appellee stepped into a hole in the track where it was unballasted. The facts averred sustain this theory, and under them it was a question of fact and not of law whether appellee knew of the defects in the track and the danger which might exist in attempting to cross. Manifestly there was little time for deliberation, and with care to protect himself from being caught by the advancing car, appellee could not slowly and deliberately inspect the placing of every footstep and give no attention to the car. A due regard at once for his safety and the performance of his duty under these circumstances might well divide the exercise of his faculties, and it cannot be said as a matter of law that he must have seen the defective conditions of the track before or when he entered upon it, and that he voluntarily encountered the risk.'' The trial court in the instant case in accord with the conclusions arrived at in the foregoing cases committed the question of the assumption of risk by the decedent, by its instructions to the jury, and we think did so properly; and for that reason we shall not disturb the finding of the jury favorable to the plaintiff thereon.

The appellant has also urged certain other defects in the instructions of the trial court, but as to these they consist in the main in alleged errors in respect to the matters

which have heretofore been considered in this opinion. The instructions of the trial court were, taken as a whole, full and fair and as to the questions of law involved require no further consideration than that which has already been given to these in this opinion.

The judgment is affirmed.

Shenk, J., Seawell, J., Curtis, J., Waste, C. J., and Finlayson, J., *pro tem.*, concurred.

Rehearing denied.