[S. F. No. 11816. In Bank.—July 21, 1926.]

EFFIE MAY JOHNSON, as Administratrix, etc., Appellant, v. SOUTHERN PACIFIC COMPANY (a Corporation) et al., Respondents.

[1] NEGLIGENCE—DEATH OF RAILROAD SWITCHMAN—ACTION FOR DAMAGES—JURISDICTION—EMPLOYMENT IN INTERSTATE COMMERCE—EVIDENCE—NONSUIT.—In this action for damages for the death of plaintiff's intestate, as the result of injuries received through the negligence of a fellow-employee while the deceased was employed as a switchman by the defendant railroad company, the trial court upon motion for nonsuit properly concluded that plaintiff had not sustained her contention that the train of cars upon which the deceased was riding at the time of the injuries which caused his death were at the time of his said injuries engaged in interstate commerce, so as to confer upon the superior court jurisdiction to entertain the action under the terms of the federal Employers' Liability Act.

[2] ID.—EMPLOYMENT IN INTERSTATE COMMERCE—BURDEN OF PROOF—PRESUMPTION.—In such an action, the burden is upon the plaintiff

---

to establish the fact that the defendant, at the very time when its employee through its negligence received the injuries which caused his death, was engaged in interstate commerce, the presumption being, in the absence of such proof, that the employer while in the use and operation of its railway within the state was engaged in intrastate commerce; and in the production of such required proof it is necessary for the plaintiff to show that one or more of the units in the train of empty cars, which the defendant was engaged in moving along its tracks at the time of decedent's injuries, had been definitely accepted and designated by said defendant for interstate uses and was moving at such time along the line of its, or their, destiny.

[3] ID. — INTENT OF SHIPPER — ACCEPTANCE OF CARS FOR INTERSTATE USE—JURISDICTION OF STATE COURTS.—Conceding that an importer of vegetable oil, in procuring two of the cars in the train in question through its leasing arrangement with a local vegetable oil company, intended to devote them, or at least one of them, to the transfer of its cargo of vegetable oil to eastern points, and that such transfer would be interstate commerce, that would not of itself suffice to cast upon defendant the burden sought to be imposed upon it in an action in the superior court under the terms of the federal Employers' Liability Act, since, in order to do so, it was essential to show that the defendant had definitely received and accepted said cars for devotion to such intended interstate uses. It is the carrier and not the owner of the article being transported who must be engaged in interstate commerce at the time the injury to its employee occurs in order to entitle the latter to invoke the jurisdiction of the state courts under the terms of said act.

(1) 12 C. J., p. 45, n. 19, p. 46, n. 23; 39 C. J., p. 1044, n. 8.
(2) 12 C. J., p. 46, n. 24 New; 39 C. J., p. 971, n. 68, p. 988, n. 14.
(3) 12 C. J., p. 43, n. 7; 39 C. J., p. 914, n. 57.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. K. S. Mahon, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Keyes & Erskine for Appellant.

Ford, Johnson & Bourquin and Henley C. Booth for Respondents.

RICHARDS, J.—This appeal is prosecuted by the plaintiff from a judgment in defendants' favor after motion

for nonsuit made and granted in the trial court. The action is one in which the plaintiff as administratrix of the estate of Gustave C. Johnson, deceased, and for the benefit of herself as his widow and of his two daughters, seeks to recover damages for injuries resulting in his death through the alleged negligence of the defendants. The deceased, at the time of receiving such injuries and of his death therefrom, was employed by the defendant Southern Pacific Company in the capacity of a switchman and was engaged in moving a train of freight-cars westerly from the belt-line of the state railroad along King Street, in the city of San Francisco, to the Mission Bay yards of the defendant in said city. It is expressly conceded that the collision which caused the death of the decedent occurred through the negligence of another employee of the defendant, and the only question presented in the case upon motion for nonsuit and upon this appeal is as to whether the train of cars upon which the deceased was riding in the course of his employment at the time of his injuries was engaged in interstate or intrastate commerce. If the former, the superior court would have jurisdiction to entertain this action under the provisions of the federal Employers' Liability Act; if the latter, the sole original jurisdiction would be in the state Industrial Accident Commission. The case as to the principles of law involved resembles in its main aspects the case of *Mappin* v. *Atchison, Topeka & Santa Fe Ry. Co.,* recently decided by this court (198 Cal. 733 [247 Pac. 911]), but as to certain of its facts it so far differs from that case as to present the serious question as to whether a different conclusion should not be arrived at upon this appeal. [1] The train of cars upon which the deceased was riding at the time he received his fatal injuries consisted in what is known in railroad parlance as a "drag," embracing a number of freight-cars which had been received by the defendant from the belt-line railroad and were being transported to its Mission Bay yards. The ultimate destination of most of these cars is immaterial to the present controversy, but as to one or two of their number it is contended that these had been so far definitely committed to interstate commerce as to render the entire train engaged in such commerce under well-established principles of law. (*Mappin* v. *Atchison, Topeka & Santa Fe Ry. Co., supra.*) As to the cars so claimed to be thus committed to interstate commerce the fol-

lowing are the undisputed facts of the case: A shipment of vegetable oil was in course of ocean transit from Manchuria, consigned to Cook, Swan & Co. of San Francisco, but intended by the latter, its owners, for further shipment by rail to certain eastern customers, with the exception of one carload thereof which, when transferred from steamer to tank-car, was to be sent to Richmond, California, and also a portion of a tank carload which was to be delivered to Nason & Company, a San Francisco customer. In order to facilitate these further shipments of said oil it was necessary that Cook, Swan & Company should procure the necessary tank-cars therefor, and accordingly the said owners of said oil arranged with the Oriental Vegetable Oils Company to lease twenty-five privately-owned tank-cars for such purposes, and gave its orders to its said lessor to assemble these cars, to route twenty-three of them east when filled with oil from the steamer, to route one of them to Richmond, and as to the remaining car to take it when loaded to its own plant in said city, to draw off some of the oil into barrels for eastern shipment, and to send the remainder in its said car to the aforesaid San Francisco customer of Cook, Swan & Company. Upon receiving the above order the Oriental Vegetable Oils Company began to assemble the required number of oil-tank cars by using some cars of its own and by arranging to procure others from other private owners of cars. One of these latter was car 328, belonging to one Victor Labordie, and intended for use in the eastern shipment of said oil. Another car, apparently the property of the Oriental Vegetable Oils Company, was numbered 1075 and it, together with car 328, was ordered to be taken to the Mission Bay yards of the defendant herein, there to await the arrival of the oil-laden steamer which was expected to be at the dock ready for unloading upon the following day. In order that these two cars might be transported from the tracks of the belt-line railroad to the Mission Bay yard of the Southern Pacific Company the traffic manager of the Oriental Vegetable Oils Company applied to the Southern Pacific Company to make such transfer and the latter accordingly issued a bill of lading to the former, which in substance recited that it had received from the Oriental Vegetable Oils Company the aforesaid two cars designated and described as "Mty Tank Cars O. V. O. X. 1075, G. R. Y. X. 328," having for their destina-

tion "Mission bay yard, State of Calif." Nothing further appears upon this bill of lading as to any agreement or understanding between the Oriental Vegetable Oils Company and the Southern Pacific Company as to any further transportation of these two cars or either of them by the latter beyond their stated destination, but there was some evidence of an oral direction that these cars when assembled with the remainder of the twenty-five cars engaged to be supplied by the Oriental Vegetable Oils Company to Cook, Swan & Company in the Mission Bay yard of the Southern Pacific Company, were to be there held awaiting the arrival of the oil-laden steamer at Pier 54, and that when it had there arrived and was ready for unloading these cars were to be taken to said dock in suitable lots for the purpose of being loaded with said oil. There was an intermediate condition to the effect that the cars were to be inspected while in the defendant's said Mission Bay yard, for the purpose of determining whether they were in condition for their intended use and the evidence in the case showed that when thus inspected after being brought to said yard and after the collision which caused the decedent's injuries and death, car 328 was found to be unfitted for such intended use and it was accordingly discarded. As to car No. 1075, however, the evidence in the case showed that it was found to be fit and that it was taken by the defendant herein to Pier 54 on the day following the decedent's injuries and was there loaded with oil, a portion of which was to be and was in fact delivered to Nason & Company, the San Francisco customer of Cook, Swan & Company, and the remainder of which was to be and was in fact taken to the plant of the Vegetable Oils Company in San Francisco, where it was barreled and reshipped to the eastern customers of Cook, Swan & Company. Upon the basis of the foregoing facts as shown by the undisputed evidence in the case, the trial court upon motion for nonsuit concluded that the plaintiff had not sustained her contention that the train of cars upon which the deceased employee of the defendant was riding at the time of the injuries which caused his death were at the time of his said injuries engaged in interstate commerce, so as to confer upon the superior court jurisdiction to entertain this action under the terms of the federal Employers' Liability Act; and hence granted said motion for nonsuit and thereupon entered judgment in the defendant's favor. We

are of the opinion that the trial court was not in error in so doing.  [2] The burden was upon the plaintiff in this action to establish the fact that the defendant, at the very time when its employee through its negligence received the injuries which caused his death, was engaged in interstate commerce, the presumption being, in the absence of such proof, that the employer while in the use and operation of its railway within the state was engaged in intrastate commerce.  (*Terry* v. *Southern Pac. Co.,* 34 Cal. App. 330 [169 Pac. 86] ; *Bradbury* v. *Chicago, R. I. & P. Ry. Co.,* 149 Iowa, 51 [40 L. R. A. (N. S.) 684, 128 N. W. 1] ; *Osborne etc.* v. *Gray,* 241 U. S. 16 [60 L. Ed. 865, 30 Sup. Ct. Rep. 486, see, also, Rose's U. S. Notes Supp.].)   In the production of such required proof it was necessary for the plaintiff in this case to show that one or more of the units in the train of empty cars, which the defendant was engaged in moving along its tracks at the time of the decedent's injuries had been definitely accepted and designated by said defendant for interstate uses and was moving at such time along the line of its, or their, destiny.   The proofs which the plaintiff tendered in that behalf fell short of sufficiency to support such burden in several essential respects.  The two particular freight cars in said train which the plaintiff relied upon as having been devoted to interstate uses were car 328 and car 1075.  Neither of these two cars belonged to the defendant, nor was either of them foreign cars which had been received by the defendant from other railroad lines at points outside of the state laden with interstate freight bound for California points, as was the case in *Mappin* v. *Atchison, Topeka & Santa Fe, supra,* and which it was the duty of the defendant after unloading to start on their homeward way.   The cars in question here were the property of private owners located within this state and such cars, prior to the leasing thereof by Cook, Swan & Company, had no inherent interstate quality whatever.   Neither had such cars or either of them taken on such quality in so far as the defendant was concerned prior to the time of the collision in which the decedent lost his life.   [3] It may be conceded that Cook, Swan & Company, in procuring said cars through its leasing arrangement with Oriental Vegetable Oils Company, intended to devote them, or at least one of them, to the transfer of its cargo of vegetable oil to eastern points;

and that such transfer would be interstate commerce; but that would not of itself suffice to cast upon the defendant the burden sought to be imposed upon it in this forum and form of action, since, in order to do so, it was essential to show that the defendant had definitely received and accepted said cars for devotion to such intended interstate uses. It is the carrier and not the owner of the article being transported who must be engaged in interstate commerce at the time the injury to its employee occurs in order to entitle the latter to invoke the jurisdiction of the state courts under the terms of the federal Employers' Liability Act. A very apt and instructive case upon this subject is that of *Southern Pacific Co.* v. *Arizona,* 249 U. S. 472 [63 L. Ed. 713, 39 Sup. Ct. Rep. 313, see, also, Rose's U. S. Notes Supp.], wherein the precise question here under consideration is discussed and decided. The cases cited in support of that decision also consider differing phases of situations resembling that of the case at bar. These with certain other apposite cases are the following: *Railroad Com., etc.,* v. *Worthington,* 225 U. S. 101 [56 L. Ed. 1004, 32 Sup. Ct. Rep. 653, see, also, Rose's U. S. Notes]; *Chicago, M. & St. P. Ry. Co.* v. *Iowa,* 233 U. S. 334 [58 L. Ed. 988, 34 Sup. Ct. Rep. 592]; *Chicago Junction Ry. Co.* v. *Industrial Acc. Bd.,* 277 Ill. 512 [115 N. E. 647]; *Delaware L. & W. R. Co.* v. *Peck,* 255 Fed. 261 [166 C. C. A. 431]; *Chicago B. & Q. R. R.* v. *Harrington,* 241 U. S. 177 [60 L. Ed. 941, 36 Sup. Ct. Rep. 517]; *Minnesota & St. L. R. R. Co.* v. *Winters,* 242 U. S. 353 [Ann. Cas. 1918B, 54, 61 L. Ed. 358, 37 Sup. Ct. Rep. 170]; *Smith* v. *Interurban Ry. Co.,* 186 Iowa, 1045 [171 N. W. 134]; *Oregon R. & N. Co.* v. *Campbell,* 180 Fed. 255; *Illinois Cent. R. Co.* v. *Behrens,* 233 U. S. 473 [Ann. Cas. 1914C, 163, 50 L. Ed. 1051, 34 Sup. Ct. Rep. 646]. It is true that in the case of *Baltimore etc. Ry. Co.* v. *Settle,* 260 U. S. 166 [67 L. Ed. 189, 43 Sup. Ct. Rep. 28], and in certain of the cases cited therein, upon which the appellant herein strongly relies, it was held that when the shipper had definitely determined the contents of the carrier's cars to be destined as interstate commerce the carrier could not be permitted to change their quality to that of intrastate traffic by the form of the agreement for carriage, such as by the issuance of local way-bills or charging local rates; but the reason underlying this line of decisions is that carriers cannot be permitted for improper motives, in bad faith and

in an attempt to avoid their responsibilities under the interstate commerce laws by attempting to give to a definite interstate movement of freight an intrastate quality by these forms of subterfuge. No such question is presented in the instant case nor is it pretended that the way-bill of the carrier herein was not issued in good faith as expressing its agreement for the transfer of the cars in question to the destination named therein. The only evidence in this record which looks in any other direction is that furnished by the witness Fontaine, who was traffic manager of the Oriental Vegetable Oils Company, and who informed one Emig, designated in the evidence as ''car clerk'' of the defendant, that the purpose of the movement of these cars from the belt-line railroad to the defendant's Mission Bay yards and thence later to Pier 54, was that these cars were there to be loaded with a shipment of oil chiefly designed for eastern points. But this volunteered statement of the traffic manager of a concern which, while the lessor of these cars, had no control over their content or destination, could not be binding either upon the owner and shipper of the oil in question or the railroad company in its acceptance of these cars for transportation to the place where they were to be loaded with said oil. The undisputed fact is that the entire control over the content to be placed in said cars and over their destination when loaded therewith remained at all times with the owner of the oil and was not transferred and was not to be transferred to the defendant until such time as these cars received their load of oil at Pier 54, and until the shipper thereof, Cook, Swan & Company, then designated the destination of each of these cars. The only agreement under which the defendant received these cars and was engaged in their transfer to its Mission Bay yards at the time of the decedent's injuries, was that contained in the way-bill issued by it upon its reception, possession and ensuing transportation of these cars to the destination named therein. By the express terms of said way-bill the defendant received and undertook to transport the two empty cars in question not as vehicles for the transportation of freight therein or to be placed therein, but as themselves parcels of freight which the defendant contracted to deliver at a stated destination, viz., at its Mission Bay yards within the city of San Francisco. Beyond said destination the defendant did

not, by the terms of its written agreement, agree to transport said cars. There is, however, some evidence to the effect that oral instructions had been given over the phone by the traffic manager of the Oriental Vegetable Oils Company to certain agents of the defendant to deliver said cars after their inspection at said yards at Dock 54 when the steamer arrived with its cargo of oil and was ready to unload it, but there is no evidence of any existing agreement or undertaking on the part of the defendant or between it and the owners of the oil content to be placed in said cars by which the defendant had become engaged or bound to transport said cars or either of them to any fixed destination, either within or without the state of California, when they had received their cargo of oil; nor is there any evidence whatever showing that any control over the destination of said cars or either of them beyond that set forth in said way-bill, or at most beyond Pier 54, had been invested in the defendant at any time prior to the time of the collision in which the decedent lost his life. On the contrary, the undisputed evidence in the case discloses that the owners of said oil fully retained and fully exercised such control over the ultimate destination of said cars up to and after they had received their content of oil; that car No. 328 failed to pass muster upon its inspection in the defendant's Mission Bay yards and never did reach said pier, receive its load of oil or go into either interstate or intrastate service, but went into a car shop for repairs; and that as to car 1075 it was transmitted, after due inspection in the defendant's said yards, to said Pier 54 and was there loaded with oil, but that after being so loaded it was, by the order of the owners of said oil, sent to the premises of Nason & Company, one of their local customers, and was there partly unloaded; and that it was then taken to the oil company's plant in San Francisco where the remainder of its oil content was barreled and then reshipped to an eastern destination; during all of which time and of these several charges of freightage said car No. 1075 remained and continued to be under the sole control, as to its ultimate destination, of the owners of said oil.

From the foregoing undisputed facts, the conclusion would seem to be irresistible that at no time prior to the collision which caused the injuries and death of the decedent had these two cars or either of them taken on the quality

of either vehicles or parcels of interstate commerce in so far as the relation of the defendant to them or to their destination was concerned. This being so, it must be further concluded that as to the train of cars upon which the decedent was employed and was riding at the time of his fatal injuries, the defendant was not in their transportation at the time of such collision engaged in interstate commerce; and this being so was not subject to the jurisdiction of the state courts in this form of action for damages to its employee which were the result of such collision.

The defendants' motion for nonsuit was therefore properly granted and the judgment based thereon is accordingly affirmed.

Shenk, J., Curtis, J., Seawell, J., Waste, C. J., and Lennon, J., concurred.