OREGON SHORT LINE & U. N. RY. CO. v. TRACY.

(Circuit Court of Appeals, Ninth Circuit. February 25, 1895.)

1. MASTER AND SERVANT—ASSUMPTION OF RISK—QUESTION FOR JURY.
   Plaintiff, while stationed as a lookout near the front end of cars which were being pushed along a spur track, was thrown forward by a collision with a car standing on the track, and injured. Brush overhung the track, and obscured the view. *Held*, that it was a question for the jury whether or not plaintiff assumed the risk attendant on such condition of the track.

2. SAME—PLEADING AND PROOF.
   Evidence that plaintiff knew of the defect which caused his injury, and assumed the risk, is inadmissible, where defendant fails to plead such facts.

3. SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.
   Plaintiff was injured while stationed as a lookout at the front end of cars which were being pushed along the track, and claimed to have been thrown forward by a collision with a car standing on the track. There was testimony that, when injured, he was attempting to step into such other car. *Held*, that whether or not plaintiff was negligent in attempting to step into the other car, if he so attempted, was a question for the jury.

Writ of Error to the Circuit Court of the United States for the District of Oregon.

Action by Frank Tracy against the Oregon Short Line & Utah Northern Railway Company for personal injuries. Judgment for plaintiff, and defendant brings error.

Cox, Cotton, Teal & Minor, for plaintiff in error.
A. S. Bennett, for defendant in error.

Before McKENNA and GILBERT, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. The defendant in error was the plaintiff in the court below in an action against the railway company to recover damages for personal injuries received by him on the 16th day of August, 1891. The plaintiff was a brakeman in the employment of the railway company. At the time of his injury he was a member of the crew of east-bound freight train No. 28. At Clarnie station, about seven miles from Portland, there is a spur or side track about one mile in length, extending to a stone quarry. In the regular course of the railway company's business, the train was required to take "blind siding reports"; that is, they were to ascertain at all sidings or spur tracks, such as that at Clarnie, the number of cars upon such tracks, and the condition of the same.

On the morning that the plaintiff was injured his train arrived at Clarnie about 10:30. The conductor of the train remained with the cars upon the main track. The plaintiff, together with two brakemen and a train hand, took the engine to go down the spur track to obtain the required information concerning cars that might be found there. They found four or five empty coal cars at the head of the spur, near the main track. They coupled the engine to these cars, and pushed them on down the spur, to look for others. The plaintiff stood upon the foremost car, and furthest from the engine, and was keeping a lookout for obstructions upon the track. The train was running at a speed of four or five miles per hour, possibly faster, when the plaintiff gave to the engineer a signal to go slower. Almost immediately thereafter he gave a signal to stop, having discovered a car upon the track. These signals were answered by the engineer, but the train struck the standing car. The force with which the cars came together is variously stated by the witnesses; some of the witnesses testifying that the force was not greater than in an ordinary coupling; the plaintiff testifying that it was many times greater. The plaintiff charges in his complaint, and stated in his evidence, that by reason of the force with which the cars came together he was thrown from the center of the car upon which he stood, over the end of the car, and upon the track, where he received the injury. The defendant's evidence tended to show that the plaintiff undertook to step from his car into the car that stood upon the track, and that in so doing he fell between the cars. The plaintiff charged the defendant with negligence on account of the condition of the track on the spur, alleging that, on account of the curves of said track, and the amount of brush and timber that was allowed to grow thereon, it was possible to see but a short distance ahead of the train, and that the defendant had negligently failed and neglected to remove the brush and timber along the track; that thereby the view was obscured so that it was impossible for any one in charge of the train, or riding upon the same, to discover any obstruction which might be ahead of him upon the track. The trial resulted in a judgment for the plaintiff for the sum of $4,000.

The principal question for consideration upon the writ of error concerns the instruction of the court to the jury in regard to the condition of the defendant's track, and the obstruction to the same by reason of the brush. It is said that the court erred in refusing the instruction asked for by the defendant, and in charging the jury as follows:

"It is the duty of a railroad company to be careful and prudent in providing a safe roadbed for its employés, and in keeping the same free from obstructions; and if it fails in this respect, and its employés are injured thereby, without fault on their part, the company is liable. There is no arbitrary rule as to how near the track brush or timber may be left standing. This is a matter that depends upon circumstances, the character of the road, the use to which it is put, the difficulty or expense of clearing, and the danger, if any, to which those engaged on the road are subject in consequence of such nearness. It is a question that addresses itself to your judgment as practical men, whether the conduct of the company in this respect was reasonable under all these circumstances."

The instruction requested by the defendant is as follows:

"The question of overhanging brush, which the plaintiff claims was of such a character as that it obstructed the view of himself and trainmen while passing over the side track in question, is material in this case, and you cannot consider these claims of the plaintiff in determining the question of whether or not there was any negligence of the defendant upon which the plaintiff can recover."

It is contended by the plaintiff in error that the presence of the brush overhanging the track on the spur was one of the conditions of that track, visible to the plaintiff, and that he assumed all the risks incident thereto. In support of that contention reference is made to Kohn v. McNulta, 147 U. S. 238, 13 Sup. Ct. 298; Southern Pac. Co. v. Seley, 152 U. S. 145, 14 Sup. Ct. 530; and Tuttle v. Railway Co., 122 U. S. 189, 7 Sup. Ct. 1166. In the first of these cases the plaintiff was injured while coupling freight cars. The injury was said to have been occasioned by the fact that the cars were fitted out with double deadwoods or bumpers of unusual length; but it appeared that cars constructed in that manner were not unusual upon that track, and that the risk of coupling them was an obvious one, and required no special skill or knowledge for its detection. It was therefore held that the risk of coupling such cars was one of the ordinary risks incurred by the plaintiff, and that he could not recover. In the case of Southern Pac. Co. v. Seley an employé of the railroad company was injured, while coupling cars of the company, by putting his foot into an unblocked frog at the switch, whereby his foot was caught and held, and he was thrown down and killed. In an action by his administratrix for the damages it was held that Seley must be assumed to have entered into and continued in the employment of the railroad company with full knowledge of any danger which might arise from the use of unblocked frogs. In Tuttle v. Railway Co., the accident would not have happened to the employé but for the sharpness of a curve of the company's track, and it was contended that the construction and maintenance of a track with such sharp curves was itself negligence. But the court held that the perils from a sharp curve were seen and known, and that they were not like the defects of unsafe machinery, which the employer has neglected to repair, and which his employés have reason to suppose is in proper working condition. The court said:

"The danger existed only on the inside of the curve. This must have been known to him. It would be presumed that, as an experienced brakeman, he did know it, for it was one of those things which happened in the course of his employment under such conditions as existed here."

But it is not apparent in the case before the court that the dangerous condition of the track, owing to the overhanging brush, was one of the conditions of its construction, or that such danger was necessarily apparent to an employé of the road, however skilled or experienced. The condition of the brush by the side of the track is not a fixed one. It is not like the curves, or the embankments, or the established structures of the road. Nor was this spur a part of the track which was in daily use. The condition of the brush was a

changing one. In one season, 'or in a few weeks even, the brush might grow to such an extent as to entirely change the condition of things. This case, instead of being related to the cases depending upon the construction of the road, such as the decisions above referred to, is rather analogous to the cases where the changing conditions of the road have introduced an element of peril which before did not exist, and was therefore not seen and not assumed by the employé. In the case of Babcock v. Railroad Co., 150 Mass. 467, 23 N. E. 325, the plaintiff, an employé of the road, in attempting to get upon a moving engine, struck upon a pile of railroad ties, which was placed within eighteen inches of the track, and had been there for five weeks. He testified on the trial that he did not know that the ties were there, or that, if he knew it, he did not remember to have seen them. The court held that, if this were true, the plaintiff had a right to expect that the track would be free from such obstructions, and that it was a question for the jury to say whether he himself exercised due care. In Eames v. Railroad Co., 63 Tex. 660, the plaintiff, an employé of the company, was injured by a collision of his train with cattle that had got upon the track, but which could not be seen by reason of the bushes growing over the right of way. It was held that the company was liable for negligence in suffering the brush to so encroach upon the track. In the case of Hulehan v. Railway Co., 68 Wis. 520, 32 N. W. 529, the plaintiff was a brakeman, who, while coupling the defendant's cars, and running alongside the track for that purpose, struck his foot against pieces of wood which the company had suffered to remain on and about the track. It was held that the fact that the brakeman had a general knowledge of the neglect of the company to keep its track clear about its woodyard did not conclusively show that he assumed the risks arising therefrom, especially if he did not know of the obstructions on the track at the place where he was injured; and that it was a question for the jury in such a case to; say whether he was guilty of negligence in remaining in the employment of the company. In McClarney v. Railway Co., 80 Wis. 277, 49 N. W. 963, the evidence was that a train was derailed on account of the presence of ice and snow which was suffered to remain and accumulate upon the track, whereby the plaintiff was injured. It was held that the railroad company owes to its employés the duty of keeping its track free from dangerous obstructions, such as ice, snow, or rubbish. In the case of Railway Co. v. O'Brien, 4 U. S. App. 221, 1 C. C. A. 354, 49 Fed. 538, the plaintiff's intestate had been injured by reason of sand and gravel which had been washed upon the track, thereby derailing his engine. There was evidence to the effect that the company had been negligent in constructing its track, in that it had made no provision for a culvert at the point where the sand and gravel was deposited, and that the topography of the country was such as to make apparent the necessity for such a culvert at that place. The court distinguished that case from the Tuttle Case, and said:

"The difference between the kind of knowledge called into action in determining the sharpness of a curve that is needed in running a railway line at a

given point and that exercised in determining whether the exigencies of a given situation require that some escape or outlet should be furnished for water liable to come down a natural waterway intersecting the line of railway is so great that it renders the rule applicable to the one case inapplicable to the other. The training and knowledge of an engineer is not needed to enable one to understand the action of water in rushing down a gully or similar waterway, nor to know, if an obstruction like a solid railway roadbed is built across a waterway, down which any considerable amount of water may be expected to pass, that unless an outlet is given to it, it must of necessity collect against the roadbed, and perchance overflow it. Such facts are matters of common knowledge, gathered from the experience and observation of every-day life."

The distinguishing principle between these two classes of cases is that in the one the defects are visible and apparent, and the dangers therefrom are presumed to be known and assumed, while in the other the danger is not seen, and no such presumption arises. The condition of the switches and frogs, the degree of the curvature of the track, are all fixed conditions, which are visible to the eye. The experienced employé knows that he is to serve the railroad company with its road and cars in the condition in which he sees them, and he knows the danger that may attend such service. But he does not necessarily know, and he cannot be expected to meet, dangers which arise from changes in those conditions, however apparent may be the causes which produce them. He is not presumed to know that the rains and floods will have covered the track with earth and sand at a place where common prudence would require that provision be made against the occurrence of such an obstruction. He is not required to assume that ice and snow will be allowed negligently to accumulate upon the track and switches, or that other obstructions will be placed on or about the same, so as to render the track unsafe, or his work more dangerous than it otherwise would be.

But it is urged that the plaintiff was in a position to see the condition of the track upon the spur, and that it was his duty to govern the movement of the train in accordance with the danger which, if it existed, must have been apparent to him. There can be no doubt that the plaintiff was, at the time of the injury, practically in charge and control of the train. As the train was going, he was the foremost of the employés stationed thereon, and it was his duty to look out for obstructions. If danger was apparent to him from the fact that the overhanging brush obstructed his view of the track, it was his duty to cause the speed of the train to be slackened, and to allow it to proceed no faster than was consistent with the safety of himself and of his coemployés. He was as much required to adjust the movement of the train to the circumstances of his shortened range of vision and the danger that might result therefrom as he would have been had his view been obscured by fog or darkness. The law does not require a railroad company to clear its track of brush. It clearly has the right to suffer brush to grow thereupon to any extent it sees fit, provided it does not lead its employés into an undisclosed danger. If the employés can see the danger, they have the means of avoiding it. But there was evidence in this case tending to show that the brush which obstructed the view

was not uniform. At the upper end of the spur, where the train started to go down to the quarry, there appears to have been little brush to interfere with a proper watch over the track at the rate of speed at which the train was going. As they approached the place of the injury, however, there is evidence that the brush was much more dense. The plaintiff testifies that it was in consequence of this fact he gave the first signal to go slower. So far as the evidence is concerned, the jury may have taken the view that the railway company was negligent in suffering the brush to overhang the track at about the particular point where the accident occurred, and that the danger was, by reason thereof, not apparent to the plaintiff; or that the plaintiff, in the exercise of reasonable care and diligence on his part, might not have discovered the same. There was other evidence in this connection which the jury might properly consider,—evidence which tended to prove that a certain degree of speed was expected of the freight train, and that its scheduled time for going from Portland to Clarnie, including the run down the spur and back and taking report of the cars there found, was limited to one hour. In view of all the evidence, the court might properly leave it to the jury in their judgment to say whether there was negligence upon the part of the railway company in leaving the brush standing as it was upon the right of way.

It is assigned as error that the court excluded evidence offered by the defendant tending to prove that the plaintiff knew the condition of the track where the accident occurred, and that he therefore assumed the risks incident thereto. The defendant had not pleaded such knowledge upon the part of plaintiff, and the ruling of the court was in accordance with the doctrine established by the authorities. 14 Am. & Eng. Enc. Law, 844; Mayes v. Railroad Co., 63 Iowa, 562, 14 N. W. 340, and 19 N. W. 680; Hulehan v. Railroad Co., 68 Wis. 520, 32 N. W. 529; Railroad Co. v. Orr, 84 Ind. 50. The doctrine of these decisions is that the assumption of the risk after knowledge of the defects is matter of defense in the nature of a waiver of the right to recover for the defendant's negligence, and must be pleaded.

It is further assigned as error that the court, in instructing the jury upon the subject of contributory negligence, concluded the charge with the following words:

"If he fell in the exercise of reasonable care, no matter whether he fell while stepping off one car to another, if it was caused by the jolt of the cars, the company was negligent in that respect."

It is argued that the plaintiff saw the cars approaching, and that from his experience he was able to judge what the effect of the shock would be, and that, instead of remaining in a place of safety, and taking precautions by bracing himself or by holding to the sides of the car, he assumed that the shock would not be dangerous, and voluntarily stepped forward, and placed himself in a position of the greatest danger. It is contended that the instruction permitted the jury to find that the plaintiff could recover, even while stepping from one car to the other, provided his fall was caused by a jolting or the bumping of the cars, occurring at the time. This

view of the instruction leaves out the consideration of the fact that the court, in the whole charge upon the subject of contributory negligence, distinctly coupled the same with the condition that the jury should find that the plaintiff fell while in the exercise of reasonable care upon his part. The plaintiff's own evidence was that he did not attempt to step from one car to the other, but was thrown over the end of his car. There was some testimony of the other witnesses to the effect that it appeared to them at the time that he was attempting to step into the forward car. The charge of the court informed the jury, in substance, that if, in the excitement of the moment, the plaintiff, while exercising reasonable care, attempted to step from one car to the other, that fact would not defeat his recovery. Taking the whole charge upon the subject of contributory negligence, we find no error which would justify the reversal of the judgment. The judgment is affirmed, with costs to the defendant in error.