[Civ. No. 7692. First Appellate District, Division One.—August 14, 1931.]

GEORGE THOMAS, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

W. I. Gilbert for Appellant.

Paul Blackwood for Respondent.

MURPHEY, J., *pro tem.*—In this action respondent seeks to recover damages against appellant for personal injuries sustained by him while employed by appellant in interstate commerce as a switch-tender, which position he had occupied in the Los Angeles yards for approximately three years before the accident. During the course of a night's work, his duty required him to throw about thirty switches. In throwing a switch, the operator stands on an iron plate approximately twenty inches wide and forty feet long. The switches are thrown by a lever set into and level with the plate or platform on which the operator stands. In order to reach the lever, the operator stoops, releases a safety catch with one hand and takes hold of the lever with the other, raising it to make the throw of the switch points. The lever weighs fifteen or twenty pounds and requires considerable pressure to operate it. One operation of the lever throws eight switch points, each about fifteen feet long, and the total weight of equipment operated by one swing of the lever runs into tons.

At 11:30 o'clock on the night of the accident, when respondent came on duty, the switch was in good condition and was thrown by him six or eight times prior to the accident. On two of these occasions, about twenty or twenty-five minutes before the accident, the switch was thrown for the particular yard engine claimed to have deposited the sand, which caused the accident, in the switch points, and on these occasions it worked all right. At the time of the accident, respondent was attempting to operate the switch again and claims to have been thrown and injured, due to the lever being jerked out of his hand, as a result of the switch having been blocked by engine sand that had been permitted to run into it by appellant's yard engine above mentioned, which engine had stopped over the switch a short time before the accident. The facts of the case, so far as the happening of the accident is concerned, are substantially conceded to be as above set forth. There is some disagreement as to whether any duty devolved upon the plaintiff to perform any other service than that of throwing switches. It may be conservatively said, however, that there is an abundance of evidence to support the finding that such was his sole duty, and the full extent of his responsibilities as an employee of the defendant. The plaintiff was seriously injured as the result of his original unsuccessful effort to throw the switch point. There is ample evidence in the record to sustain this statement of fact, but in addition to the record evidence, the trial judge and jurors were taken to the scene of the accident on the afternoon of the first day's trial, where a personal inspection was made of the physical condition prevailing at that point, and experiments were made, by employees of the defendant and one of the jurors, in operating the switches.

So far as the negligence phase of the case is concerned, the only defense available to the defendant is that, with respect to the happening of the accident, the admitted facts do not measure up to the legal standards of actionable negligence. An examination of the authorities, we are satisfied, can leave little doubt that, under the facts and circumstances of this case, the determination of the question of the negligence of fellow-servants of respondent is a question of fact for the jury. The evidence as to the duties incumbent upon respondent as a switch-tender may be fairly

summarized as follows: The respondent testified: "The job I was holding at the time of my accident was an active job. I worked eight hours; there were three shifts, and I held one shift during all that time. My duties as switch-tender were these—the switch-tender throws switches and keeps the trains moving. You take the orders which the yard-master passes over to you, and keep your trains going, and see that you get them in the right place. I had no duties to perform at the switch stand except that of throwing the switch itself. I have never been required to clean up oil and stuff around places on the railroad. I didn't know the oil was there. I might have wiped it off if I had known; probable would. The assistant yard-master, Henry W. Young, was in charge of this place down where I was working. When I had matters to report, I reported them to him. When I fell forward there, I got up on my hands and knees and I was covered with black engine oil. The oil was on the place where I had been standing to attempt to throw the switch. I stood on this plate for the purpose of throwing the switch. I do not know how that oil got on that switch plate. I had seen oil on that particular switch plate before. I do know how that oil got on that switch plate; it got there spilling from the engines. When I saw oil on other occasions, I did do something; I notified the yard office. I had a lantern that night. I didn't notice the oil at all, until I had it on my hands and knees after my fall." Con Riley, a witness called by the appellant, testified: "My business is passenger section foreman in the passenger yards, Los Angeles passenger yards. I have been with the Southern Pacific Company for twenty-five years. I do know where this switch is that is in evidence in this accident; that is in my territory and I have charge of that equipment. I inspect those switches, see that they are in proper working condition; I inspect those switches in the yard nearly every day. I do remember the occasion of November 12th, 13th, 14th, along in there, of 1925. I have not at any time in my daily inspection found any oil on that switch up there."

It is admitted that one of the printed rules of appellant, No. 46, provides yard-masters are responsible for conditions within the yard. There is no contradiction in the record with respect to the duties of the switch-tender.

Appellant did not produce evidence at the trial conflicting in any way with that above set out, which fact affords a strong presumption that if the appellant had produced the evidence within its control as to the true situation, such evidence would have been unfavorable to it. (Code Civ. Proc., sec. 1963, subd. 6; Id., sec. 2061, subds. 6 and 7.) This has generally been the rule in the federal court. (*Fitzsimmons* v. *Ogden,* 7 Cranch (11 U. S.), 2 [3 L. Ed. 249]; *Clifton* v. *United States,* 4 How. (45 U. S.) 242, 273 [11 L. Ed. 957]; *Kirby* v. *Tallmadge.* 160 U. S. 379 [40 L. Ed. 463, 16 Sup. Ct. Rep. 349, see, also, Rose's U. S. Notes].) This presumption is further strengthened by the fact that such testimony as was produced by appellant at the trial of this action was corroborative of respondent's positive testimony that it was not his duty to inspect or maintain this switch and keep it in good working order.

With respect to sand at the switch point, respondent testified as follows: "It was unusual to have the sand. I had never seen sand that way before. That was the first time I had found sand in that particular switch in my whole railroad experience. I do know what sand is used for on railroads. It gives the engine traction power. . . . I know that every railroad engine, practically, carried a sand tank for that purpose." Edward J. Kelly, who for twenty-three years had been an engineer for the Southern Pacific Company, five years of which he operated a switch-engine, but who was not in the employ of the appellant at the time of the accident, testified: "The practice is to shut off sand when approaching these switches. It is shut off because it is dangerous to let sand run. It will plug up the switch points and prevent the operation of the switch."

It is a well-settled rule upon the issue of negligence in the performance or omission to perform an act, that evidence of the ordinary practice and custom, if any, generally followed in the performance of same, is competent. (*Hennessey* v. *Bingham,* 125 Cal. 627 [58 Pac. 200]; *Cadillac Motor Car Co.* v. *Johnson,* 221 Fed. 801 [Ann. Cas. 1917E, 581, L. R. A. 1915E, 287, 137 C. C. A. 279]; *McComb* v. *Atchison, Topeka & Santa Fe R. Co.,* 110 Cal. App. 303 [294 Pac. 81]; *Owl Creek Coal Co.* v. *Goleb,* 210 Fed. 209, 216 [127 C. C. A. 27].) In which last case, the court used the following language: "It is equally well settled that,

upon the issue of negligence in the performance or omission of an act, evidence of the ordinary practice and the usual custom, if any, of ordinarily prudent and intelligent persons in the performance, under the same or like circumstances, of the same, or like acts is, competent.'' (Citing cases.) It is manifest, therefore, that there is substantial evidence to support the contention of the respondent in this case that his sole duty in the operating of the switch point did not require him either to inspect the platform or the place upon which he stood or the switch points themselves to determine whether they were in working order. Furthermore, that the deposit of sand in the switch point was an unusual occurrence generally and, as to the respondent himself, entirely unknown to his experience. ■ It would hardly seem necessary to quote authorities to sustain the position that there is a positive duty upon the master to furnish its servants with reasonably safe instrumentalities, and a reasonably safe place wherein to do their work, and that the servant has a right under the law to assume that the master has performed such duty. ■ There is an abundance of authority, both federal and state, to support the proposition that under the facts and circumstances of this case the question, as to whether the instrumentality supplied to the plaintiff in the performance of his duties measured up to that standard, is one of fact for the jury. (*Mappin* v. *Atchison, Topeka etc R. Co.*, 198 Cal. 733 [49 A. L. R. 1330, 247 Pac. 911]; *Neale* v. *Atchison etc. R. Co.*, 178 Cal. 225 [172 Pac. 1105]; *Boin* v. *Spreckels Sugar Co.*, 155 Cal. 612 [102 Pac. 937]; *Kreitzer* v. *Southern Pacific Co.*, 38 Cal. App. 654 [177 Pac. 477]; *Chesapeake & Ohio R. Co.* v. *De Atley*, 241 U. S. 310 [60 L. Ed. 1016, 36 Sup. Ct. Rep. 564, see, also, Rose's U. S. Notes]; *Carolina C. & O. R. Co.* v. *Stroup*, 239 Fed. 75 [152 C. C. A. 125].)

■ There is ample evidence in the record, direct and inferential, that the sand found in the switch point upon which the accident is predicated was deposited by a switch-engine operated by an employee of the defendant. Whether such acts, conduct and activities constituted negligence under the authorities is a question of fact for the jury. In *Sioux City & Pacific R. R. Co.* v. *Stout*, 84 U. S. (17 Wall.) 657, 661 [21 L. Ed. 745], the court says: ''If, upon any construction which the jury was authorized to put upon the evi-

dence, or by any inferences they were authorized to draw from it, the conclusion of negligence can be justified, the defendant was not entitled to'' a nonsuit, but the question of negligence must be left to the jury. In *Davidson Steamship Co.* v. *United States,* 205 U. S. 187, 192 [51 L. Ed. 764, 27 Sup. Ct. Rep. 480, 482, see, also, Rose's U. S. Notes], the court says: ''It is well settled that where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact, and to be settled by a jury; and this, whether the uncertainty arises from a conflict in the testimony, or because of facts being undisputed, fair-minded men will honestly draw different conclusions from them.''

The second ground of defense set up by appellant in this action is that the plaintiff was engaged in interstate commerce and that said accident and injury, if it occurred at all, arose directly from the risks and dangers ordinarily incident to and attendant upon the operation of the equipment in interstate commerce and that said risks and dangers, by virtue of his employment, were risks and dangers assumed by him. The law is clear that upon the question of the assumption of risk or danger, whether from ordinary risks incident to the employment or from extraordinary hazards caused by the master's negligence, is a special defense and must be pleaded. It may be noted, however, in this connection that the defendant does not plead extraordinary hazard. In the case of *Bird* v. *Utica Gold Min. Co.,* 2 Cal. App. 674 677 [84 Pac. 256, 258], the court says: ''If the particular employment of plaintiff was such that he must be deemed to have assumed the risk of working in a dangerous place, we think this was an affirmative defense to be shown by defendants. One who relies upon an exception to a general rule must state the facts which bring his case within it. (*Senter* v. *Davis,* 38 Cal. 450.) It is the general rule that an employer is liable to his servant for injuries resulting from the employer's negligent failure to provide a safe place to work. To this there may be exceptions, as where the servant is employed to make a place safe. A defense found on such an exception is an affirmative defense, and need not be negatived by the plaintiff.'' In the case of *Oregon Short Line & U. N. R. Co.* v. *Tracy,* 66 Fed. 931, 936 [14 C. C. A. 199],

the court says: "It is assigned as error that the court excluded evidence offered by the defendant tending to prove that the plaintiff knew the condition of the track where the accident occurred, and that he therefore assumed the risks incident thereto. The defendant had not pleaded such knowledge upon the part of plaintiff, and the ruling of the court was in accordance with the doctrine established by the authorities. (Citing cases.) The doctrine of these decisions is that the assumption of the risk after knowledge of the defects is matter of defense in the nature of a waiver of the right to recover for the defendant's negligence, and must be pleaded."

It is not enough for appellant to attempt to show bare knowledge in order to raise this question, but it must go further and show that the situation was dangerous, and that the danger was so open and obvious that respondent knew and appreciated or must be charged with the knowledge and appreciation of its hazards. In *Gila Valley R. Co.* v. *Hall*, 232 U. S. 94, 102 [58 L. Ed. 521, 34 Sup. Ct. Rep. 229, 231], the court says: "Moreover, in order to charge an employee with the assumption of a risk attributable to a defect due to the employer's negligence, it must appear not only that he knew (or is presumed to have known) of the defect, but that he knew that it endangered his safety; or else such danger must have been so obvious that an ordinarily prudent person, under the circumstances would have appreciated it." (*Chesapeake & Ohio R. Co.* v. *De Atley, supra; Chicago, R. I. & P. R. Co.* v. *Ward*, 252 U. S. 18 [64 L. Ed. 430, 40 Sup. Ct. Rep. 275].)

The record does not disclose any evidence whereby appellant attempted to offer any proof whatever upon the question of extraordinary risks and hazards caused by the master's negligence. In appellant's answer it is alleged only, that the accident and injury arose directly from risks and dangers ordinarily incident and attendant upon the operation of said equipment. However, in any event, if respondent's assumption of risk of the negligent acts of appellant's employee by reason of his knowledge of the risk, and an appreciation of the danger arising therefrom, may be said to be an issue in this case, there can be no question but that the matter was submitted to the jury for its decision, and the decision of the jury and the judgment

of the court based thereon will be binding and determinative of the issue on this appeal.

In *Kanawha etc. R. Co.* v. *Kerse,* 239 U. S. 576, 581 [60 L. Ed. 448, 36 Sup. Ct. Rep. 174, 175], the court said: "The burden of proof of the assumption of risk was upon defendant, and unless the evidence tending to show it was clear and from unimpeached witnesses, and free from contradiction, the trial court could not be charged with error in refusing to take the question from the jury."

In *Mappin* v. *Atchison, Topeka etc. R. Co.,* 198 Cal. 733, 742 [49 A. L. R. 1330, 247 Pac. 911, 915], the court says: "It may be stated *in limine* that it is conceded that the defense of assumption of risk is one of the defenses which may be taken advantage of by a defendant carrier where the action is brought under the provisions of the Federal Employers' Liability Act; but it should also be said that upon the issue of assumption of risk the burden of proof is upon the employer (*Kanawha etc. R. Co.* v. *Kerse,* 239 U. S. 576 [60 L. Ed. 448, 36 Sup. Ct. Rep. 174, see, also, Rose's U. S. Notes]; 18 R. C. L., sec. 126, p. 631; 16 Cal. Jur., p. 1079, and cases cited); and that as a general rule the question of assumption of risk is a question of fact for the jury. (16 Cal. Jur., p. 1080, and cases cited.) The only exception to this rule is that when the evidence in the case is clear, direct, and undisputed the question of assumption of risk becomes a question of law for the court."

When applied to the facts of this case, it is manifest that the evidence, if any, of the assumption of risk by respondent fails utterly to measure up to this standard. In *Chesapeake & O. R. Co.* v. *Winder,* 23 Fed. (2d) 794, 795 (C. C. A., 4th Cir.), the court says: "On the second point, as to the assumption of the risk by the defendant, while it is true that the defense of the assumption of risk is not barred by the Federal Employers' Liability Act (45 U. S. C. A., secs. 51-59; Comp. Stats., secs. 8657-8665)— *Jocobs* v. *Southern R. Co.,* 241 U. S. 229 [60 L. Ed. 970, 36 Sup. Ct. Rep. 588]—the burden of proving that plaintiff had assumed the risk is upon the defendant, and in order to justify a directed verdict for the defendant on that ground the evidence tending to show such assumption must be clear and uncontradicted."

In *Kreitzer* v. *Southern Pac. Co., supra,* at page 667 of 38 Cal. App., the court says: ''Whether or not defendant was negligent in failing to provide a safe place for the decedent to work; whether decedent was guilty of gross negligence in failing to select a place which was designed for safety and was safe; whether, when placing himself in the position selected, he failed to take ordinary precautions to protect himself, were questions which, under the evidence, could not be taken from the jury and decided by the court as matter of law, but were proper questions for the jury. In *Herbert* v. *Southern Pac. Co.,* 121 Cal. 227, 229 [53 Pac. 651], the court said: 'The rule is, that negligence is a question of fact for the jury, even when there is no conflict in the evidence, if different conclusions upon the subject can be rationally drawn from the evidence.' . . . The burden of establishing the defense of assumption of risk is upon the defendant. . . . 'The question of assumption of risk is quite apart from that of contributory negligence. The servant has the right to assume that the master has used due diligence to provide suitable appliances in the operation of his business, and he does not assume the risk of the employer's negligence in performing such duties. . . . This rule is subject to the exception that where a defect is known to the employee, or is so patent as to be readily observed by him, he cannot continue to use the defective apparatus in the face of knowledge and without objection, without assuming the hazard incident to such a situation.' '' It may be remarked in passing that the facts and circumstances of this case did not bring the respondent within the purview of the exception above noted.

Appellant criticises many of the instructions given by the trial court, but we are satisfied from a careful examination of the instructions given that the jury was fully and fairly instructed upon all the issues pertaining to this case; in fact, the court fully instructed the jury upon the question of extraordinary risks and hazards, notwithstanding the fact that that issue was not raised by the pleadings as hereinabove mentioned. In its criticism of the instructions given by the trial court, it is difficult to determine what particular instructions are objected to by the defendant. Exceptions are noted to all instructions offered by the court and among those specifically excepted to in appellant's brief

are several instructions which were offered by the defendant and given by the court at its instigation. In *Campbell* v. *Southern Pac. R. Co.*, 21 Cal. App. 175, 177 [131 Pac. 80, 81], the court said: " ' . . . it may well be that some particular instruction fails to contain a complete or accurate statement of the law. If, however, when the entire charge is examined the omissions or inaccuracies in a particular instruction appear to have been supplied, and the jury fairly and consistently instructed, generally, as to the law, this is sufficient to defeat any claim of error predicated on defects in particular instructions.' " This language is strikingly appropriate to the situation disclosed by the record in this case. If we were to make any criticism at all of the instructions given by the court in this case, we would say on the whole that they were more favorable to the appellant than the law applicable thereto justified. Every issue was fully, clearly and correctly presented to the jury.

The damages awarded in this case—$25,000, assessed by the jury and approved by the court—are large, but it cannot be fairly said that when the evidence offered by the respective parties is dispassionately considered the verdict is so grossly disproportionate to any reasonable limit of compensation warranted by the facts as to shock the sense of justice, and raise at once a strong presumption that it is based on prejudice or passion rather than sober judgment. This accident happened on the thirteenth day of November, 1925, and the verdict was rendered by the jury on the twenty-third day of November, 1927, two years after the happening of the accident. The plaintiff's earning capacity was $175 a month. At the time of the trial, the evidence showed that he was still entirely incapacitated to perform any kind of work. At the time of the accident he was thirty-four years of age and had a life expectancy of 32.50 years. The opinions of several experienced physicians were to the effect that the plaintiff has a chronic permanent disability in the lower part of his back; the sacroiliac joint and also the lumbar spine; that the subluxation in the sacroiliac joint is on the right side of the joint; that there are two sides of the joint; that he will never recover. With regard to the spondylolisthetic condition, the physicians are of the same opinion. He has not been able to do any work and is not in a condition to do

any physical work. In the future he will not be able to do any work involving physical activity. This evidence if believed by the jury is sufficient to support the verdict given in this case. The court on its own motion appointed a young physician to make an examination of respondent, but, notwithstanding the fact that upon such examination this physician in his testimony minimized not only the injuries found by the more experienced doctors to exist, but was of the opinion that such injuries as respondent was afflicted with were not caused by the accident involved in this action, nevertheless it is significant that the trial judge, in sustaining the verdict of the jury, entirely discredited this evidence of his appointee. On the question of damages, in its closing brief appellant says: " . . . we must concede that in view that there was a dispute as between the respective parties as to the amount of damages which the respondent sustained, this court will not disturb the verdict of the jury, unless it can be said that the amount of damages given was awarded under passion and prejudice. We do contend, however, that a careful examination and analysis of the medical testimony given in the instant case does not justify the award of damages given by the jury; but in any event, we earnestly contend that the respondent was not entitled to any damages for the reason that he did not receive his injuries by reason of any negligence on the part of appellant or any of its servants or employees." All of which contentions were resolved in favor of the plaintiff and against the defendant, which determination under the well-settled principles of law are binding upon this court.

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 12, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 9, 1931.