[Civ. No. 10614. First Appellate District, Division Two.—November 3, 1938.]

HARRY D. McCOY, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

18

Arthur B. Dunne and Dunne & Dunne for Appellant.

Patrick J. Murphy and M. Mitchell Bourquin for Respondent.

SPENCE, J.—Plaintiff, a switchman employed by defendant, brought this action to recover damages for personal injuries sustained when he fell from a box car. Upon a trial by jury, plaintiff had judgment and from said judgment, defendant appeals.

Plaintiff sought to recover under the Federal Employer's Liability Act (45 U. S. C., sec. 51 et seq.) and the Safety Appliance Act (45 U. S. C., sec. 1 et seq.). He alleged that he and his employer were engaged in interstate commerce at the time of the accident. Defendant denied the material allegations of the complaint, defending primarily upon the ground that neither plaintiff nor defendant was engaged in interstate commerce with respect to the work which plaintiff was doing at the time. Defendant took the position that plaintiff's sole remedy was under the Workmen's Compensation Act of the state of California.

Plaintiff was injured in the switching yards at Tracy while riding a box car numbered 88589 and operating the hand brake thereon. This car had been hauled out of repair track number 23 and was being kicked into repair track number 22. It was an empty box car which had been picked up at Ione and it was destined for Oakland under a general order to route all surplus box cars to that place. It had been found to be in "bad order" at Ione, had been so tagged and had been brought to Tracy, being the nearest place where a repair

shop was located. The defect was in the hand brake mechanism.

The main contention of defendant is that the evidence was insufficient to sustain a finding that plaintiff was engaged in interstate commerce at the time he was injured. It therefore appears appropriate to make certain observations with respect to the authorities before discussing the claims of the parties with respect to the evidence found in the record.

█ In order that the Federal Employer's Liability Act may apply, "both the employer and employee at the time of the injury must have been respectively engaged and employed in interstate commerce". (*Los Angeles etc. R. R. Co.* v. *Industrial Acc. Com.*, 2 Cal. (2d) 685, 689 [43 Pac. (2d) 282].) The mere fact of employment by an interstate carrier does not bring an employee within the act (*New York, N. H. & H. R. Co.* v. *Bezue*, 284 U. S. 415 [52 Sup. Ct. 205, 76 L. Ed. 370, 77 A. L. R. 1370]) for "it is essential to a right of recovery under the act not only that the carrier be engaged in interstate commerce at the time of the injury but also that the person suffering the injury be then employed by the carrier in such commerce". (*Shanks* v. *Delaware, Lack. & West. R. R. Co.*, 239 U. S. 556 [36 Sup. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797].) In the case last cited, it is said at page 558, that "the true test of employment in such commerce in the sense intended is, was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it".

█ The remedies provided by the Federal Employer's Liability Act and the Workmen's Compensation Act of this state are not cumulative, and an injured employee who is entitled to recover under one of said acts may not recover under the other. (*Los Angeles etc. R. R. Co.* v. *Industrial Acc. Com., supra*, p. 689.)

█ The foregoing propositions of law are not disputed by plaintiff and it is apparently further conceded that plaintiff was not entitled to maintain an action at law based upon an alleged violation of the second federal act above mentioned, to wit, the Safety Appliance Act unless the parties were respectively engaged and employed in interstate commerce at the time that plaintiff was injured. This is made clear by the recent decisions. (*Tipton* v. *Atchison, T. &*

*S. F. R. Co.*, 298 U. S. 141 [56 Sup. Ct. 715, 80 L. Ed. 1091, 104 A. L. R. 831] ; *Scott* v. *Industrial Acc. Com.*, 9 Cal. (2d) 315 [70 Pac. (2d) 940] ; see, also, *Gilvary* v. *Cuyahoga Valley R. Co.*, 292 U. S. 57 [54 Sup. Ct. 573, 78 L. Ed. 1123] ; *Moore* v. *Chesapeake & O. R. Co.*, 291 U. S. 205 [54 Sup. Ct. 402, 78 L. Ed. 755].) We conclude from said authorities that if plaintiff was engaged in intrastate, and not interstate commerce at the time, his sole remedy was under the Workmen's Compensation Act of this state.

 In an action of this character the burden rests upon the plaintiff to prove the facts making the federal acts applicable. The rule with respect to the required proof and the presumption existing in the absence of such proof is stated in *Johnson* v. *Southern Pac. Co.*, 199 Cal. 126, at page 131 [248 Pac. 501, 49 A. L. R. 1323], where the court said, "The burden was upon the plaintiff in this action to establish the fact that the defendant, at the very time its employee through its negligence received the injuries which caused his death, was engaged in interstate commerce, the presumption being, in the absence of such proof, that the employer while in the use and operation of its railway within the state was engaged in intrastate commerce (citing cases)." (See, also, *Southern Pac. Co.* v. *Middleton*, 54 Fed. (2d) 833.)

 A review of the transcript in this case leads us to the conclusion that the records of the defendant and all other competent evidence presented on the main issue were in accord with said presumption and showed that plaintiff was engaged in intrastate rather than interstate commerce at the time he received his injury.

It would serve no useful purpose to set forth all of the evidence found in the voluminous transcript on file. The situation as shown by the undisputed evidence and the records of the defendant should be briefly summarized, however, before turning to the evidence upon which plaintiff relies. Four lines of the defendant company ran into Tracy, which was a division point and junction point where crews were changed, incoming trains were broken up and outgoing trains were made up. There was also a shop there for repairing cars. The yard was divided up into regions and the particular region in which the accident occurred was known as the sewer yard. In the sewer yard, only westward trains

were handled. Tracks 15 to 19 were used for making up and breaking up trains while tracks 20 to 23 were used as repair tracks. The repairmen worked from 8 A. M. to 5 P. M., during which period the repair tracks were locked. Ordinarily, these tracks were unlocked after 5 P. M. and a switch engine switched the cars out of these tracks and stored them on what was known as the brewery track. This was done in order that these repair tracks might be used during the night for the purpose of passing cars along these tracks from one end of the yard to the other.

Plaintiff was a member of foreman Ballinger's switching crew, which crew was working in the sewer yard between 11 P. M. and 7 A. M. on the night in question. The ordinary duties of this crew were to switch westward trains and, when this work was completed, to take the cars which had been stored on the brewery track and to return them to the repair tracks. The crew, of which plaintiff was a member, worked only in the sewer yard on the night in question and was doing the regular sewer yard job. The accident happened at about 3:30 A. M. on May 23d.

The uncontradicted evidence shows that the engine had hold of several cars in addition to said car 88589 as it pulled out of track 23 just before the accident happened. Car 88589 was the most easterly car. It had been placed upon track 23 by another crew as it was a bad order car, marked to go on the repair tracks. Ballinger and another member of Ballinger's crew testified that their crew had finished switching trains and was working at spotting up the repair tracks with cars being returned from the brewery track. Track 22 had been spotted up and when they went to spot up track 23, they found the extra car there. They had 13 other cars and as track 23 would hold only 13 cars, the engine pulled all 14 cars off track 23 and kicked 88589, the most easterly car, into track 22. It was in this movement that plaintiff was injured. Thereafter, the remaining 13 cars were spotted on track 23 and no further work was done with that track. Most of said 13 cars were shown to have been on track 23 on May 22d as well as on May 23d. All of said cars were identified by number, all were accounted for and none was shown to have been related in any way to interstate commerce.

Certain testimony was given by plaintiff by which he sought to show that car 88589 and other cars involved in the switching movement were related to interstate commerce so as to make the federal acts applicable. Plaintiff testified that a train came into the yard at about 3 A. M. and that his crew was working breaking up said train and making up a train for the west. Neither the train alleged to have arrived at about 3 A. M., nor any car thereon was identified by number or in any other manner which would permit the tracing thereof with the exception that plaintiff claimed that car 88589 formed a part of said train. The records of the defendant and the testimony of all witnesses other than plaintiff showed that no train arrived at or about that time and that car 88589 had come into Tracy from Stockton on a train which arrived at about 10 P. M. that night. The records of the defendant further showed that said car 88589 had come into this state from Toledo, Oregon, with a load of lumber over two months prior to the accident and had been unloaded in Stockton shortly after its arrival; that it had been in this state since that time making only local movements in the vicinity of Stockton and had then been hauled empty and in bad order from Ione to Tracy en route to Oakland under the general order to which reference has been made. Thus far such conflict as may be found in the evidence could not be material on the main issue under discussion for if plaintiff's evidence be accepted as true, it was wholly insufficient to prove the facts necessary to bring the case within the application of the federal acts.

We now come to the testimony of plaintiff with respect to certain cards which he claimed to have seen upon certain cars involved in the switching movement and the further testimony of plaintiff regarding a conversation which he claimed he had with Ballinger, the foreman of his switching crew. It may be stated in passing that numerous persons who were in the Tracy yards were called as witnesses but none had seen any of these cards to which plaintiff referred. It may also be stated that Ballinger denied having the claimed conversation with plaintiff.

Plaintiff testified that on car 88589, the bad order car, he saw a plain white card marked in pencil "May 21, Portland to Newark, for salt loading"; that on another car which

the engine had hold of at the time, there was a plain white card marked "Yuma, Arizona"; that on another such car, there was a card marked "Kansas City, Mo."; and that on another such car there was a plain white or gray card marked "D. S. K. for Ogden". There was not a particle of evidence showing the authenticity of said cards. There was no evidence to show when, where or by whom said cards were placed upon said cars or to show that said cars were moving under said cards at the time in question. Plaintiff endeavors to make the claim that said cars were thus carded at Tracy but there is no evidence to sustain this claim. In fact, the evidence shows without conflict that when cars were carded at Tracy, such carding was done with cards exhibiting a large code number indicating the routing of the car to the next junction point. The evidence further shows that the actual destination of cars was never entered upon said cards except in case of "shorts", meaning cars going in the direction of the next junction point but which were not to go as far as that junction point. In other words, it appeared that the alleged cards did not correspond to the practice of carding cars at Tracy and it did not appear that said cars corresponded to the practice of carding cars at any other point.

Defendant made appropriate objections to the introduction of all of the evidence concerning said cards. Defendant's objections were overruled and defendant contends on this appeal that the trial court erred in its rulings upon said objections. We are of the opinion that defendant's contention must be sustained and that the evidence admitted relating to said cards was incompetent evidence upon the issue under discussion. (*Wise* v. *Lehigh Valley R. R. Co.*, 43 Fed. (2d) 692; *Oklahoma Ry. Co.* v. *Dalton*, 174 Okl. 170 [50 Pac. (2d) 302].) None of the cases cited by plaintiff hold that such evidence was admissible under the circumstances before us.

The further testimony given by plaintiff related to a conversation which he claimed he had with Ballinger shortly before the accident. Appropriate objections were made by defendant and the objections were overruled.. In response to the question, plaintiff testified that Ballinger then said to plaintiff "we have got to get those cars out of here for the Oakland train . . . that car for Ogden has got to go". Appellant contends that the trial court erred

in admitting said evidence and in refusing to strike it out upon motion. In our opinion, appellant's contention must be sustained. The case of *Mirkowicz* v. *Reading Co.*, 84 Fed. (2d) 537, *certiorari* denied, 299 U. S. 579 [57 Sup. Ct. 43, 81 L. Ed. 426]), appears to be directly in point. There the trial court had stricken out the statement of the yard master as to the intended destination of the cars of the train and had thereafter granted a nonsuit. The judgment was affirmed, the court holding that said statement was inadmissible on the issue of whether the work being performed by the plaintiff was interstate in character.

In plaintiff's brief, there are two other cars mentioned by number. The first is a freight car numbered 24527 and the second is an empty tank car numbered GATX–1009. It is a sufficient answer to plaintiff's claims with respect to these cars to state that there was no evidence to show that either of said cars was involved in the train movement in which plaintiff was injured and furthermore that there was no evidence to show that either of said cars moved in or out of Tracy in interstate commerce.

It therefore appears that there was no competent evidence in the record to controvert the presumption that the switching movement in the Tracy yard was an intrastate rather than an interstate movement. We therefore conclude that defendant's contention that the evidence was insufficient to sustain the judgment must be sustained.

In view of the conclusions which we have reached, we deem it unnecessary to discuss the other points raised on this appeal.

The judgment is reversed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 3, 1938, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 29, 1938. Seawell, J., voted for a hearing.