IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

STATE OF WASHINGTON,

          Respondent,

    v.

PABLO ISRAEL LOPEZ-VELAZQUEZ,

          Appellant.

No. 87640-6-I

ORDER DENYING MOTION
FOR RECONSIDERATION,
WITHDRAWING OPINION,
AND SUBSTITUTING
OPINION

The Appellant has moved for reconsideration of the unpublished opinion filed on April 13, 2026. The panel has considered the motion and has determined that the motion should be denied, the opinion should be withdrawn, and a substitute opinion be filed.

Now, therefore, it is hereby

ORDERED that the respondent's motion for reconsideration is denied; and it is further

ORDERED that the unpublished opinion filed on April 13, 2026, is withdrawn; and it is further

ORDERED that a substitute unpublished opinion be filed.

_____
Coburn, J.

_____
Birk, J.

_____
Mann, J.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

PABLO ISRAEL LOPEZ-VELAZQUEZ,

Appellant.

No. 87640-6-I

DIVISION ONE

UNPUBLISHED OPINION

COBURN, J. — A jury convicted Pablo Lopez-Velazquez of raping and molesting D.M. in the first degree when she was four years old. At sentencing, the trial court found the defendant not indigent and imposed a victim penalty assessment. Lopez-Velazquez appeals, arguing there was insufficient evidence that he raped D.M. when she was four years old and that the court erred by not finding he was indigent. We disagree and affirm.

FACTS

D.M. was born on September 19, 2009. D.M.'s mother told Lopez-Velazquez he was the biological father, but a paternity test when D.M. was 10 months old proved otherwise. Lopez-Velazquez nevertheless remained in D.M.'s life. D.M. and one of her half-sisters would regularly spend time with Lopez-Velaquez in his apartment. Though D.M. told her biological mother that Lopez-Velaquez was sexually abusing her, she did not believe it. D.M. entered the foster care system at age five and was adopted in 2023.

While in foster care with the family who eventually adopted her, D.M. exhibited unusual behavior, raising concerns that eventually led to D.M. disclosing that Lopez-Valazquez sexually abused her. The State charged Lopez-Velazquez with rape of a child in the first degree, and two counts of child molestation in the first degree. Trial did not occur until November 2024, more than a decade after the alleged criminal acts.

At trial, D.M. testified that when she lived with her mother she went to Lopez-Velazquez's apartment one to two times a week, often staying overnight. When D.M. was around two or three years old, Lopez-Velazquez first took D.M. into the bathroom, told her to take off her clothes, sat her on the ledge of the bathtub and told her to touch her vagina while he recorded her with a camera and took pictures. Lopez-Velazquez also touched both the inside and outside of D.M.'s vagina as well as her chest. D.M. indicated that this same conduct "happened, like, every time." On some occasions, Lopez-Velazquez forced D.M. to touch his penis, and on one specific occasion, D.M. refused Lopez-Velazquez's request that they go into the bathroom, so he physically carried her and shoved her against a wall, causing D.M. to have a permanent scar on her lower lip.

D.M. testified that Lopez-Velazquez did not inappropriately touch her when she was older than two or three years old. However, she also stated that she did not know the exact timeline of when Lopez-Velazquez was in her life. The State refreshed D.M.'s memory with an interview transcript from 2020 where she discussed when Lopez-Velazquez was in her life. D.M. indicated that her memory of this timeline was more vivid in 2020. After reviewing the transcript, D.M stated that Lopez-Velazquez was in her life until she was about four to five years old, as well as before she was four years old.

2

Additionally, she clarified that when she was two or three years old she started seeing Lopez-Valezquez, not stopped seeing him.[1]

Based on the to-convict jury instructions proposed by the State, and adopted by the trial court, the State was required to prove that Lopez-Velazquez had sexual intercourse with D.M. "between September 19, 2013 and September 18, 2014," which is when D.M. was four years old. The State also requested a unanimity instruction. The State explained that though D.M.'s testimony did not distinguish with specific facts separate instances of rape of a child, she did testify that abuse happened on a weekly basis, sometimes up to two times a day, and was always the same. The State indicated that it did plan to talk about the first time the rape occurred, but not "plan to elect." Defense counsel also advocated for a unanimity instruction. The court instructed the jury: "In alleging that the defendant committed Rape of a Child in the First Degree, the State relies upon evidence regarding a single act constituting the alleged crime. To convict the defendant, you must unanimously agree that this specific act was proved."

During closing, the State argued:

> And I first wanted to address Count 1, rape of a child in the first degree. Now, [D.M.] testified yesterday that there were multiple times that Pablo would use his hands and fingers to touch the inside and outside of her bare vagina. But [DM.] specifically told you about the first time this happened, after he took her into the bathroom. And the State is relying on [D.M.'s] description of that first time as the basis for Count 1.

A jury convicted Lopez-Velazquez of child rape in the first degree and one count of child molestation in the first degree. At sentencing, the trial court imposed a 12.3-year sentence and a mandatory $500 victim penalty assessment (VPA). Lopez-Velazquez

---

[1] Following D.M.'s testimony at trial, the court granted the State's motion to dismiss the second count of child molestation in the first degree.

appeals his conviction, arguing that there is insufficient evidence that he raped D.M. when she was four years old and that we should strike the VPA because the trial court should have known that Lopez-Velazquez is indigent.

DISCUSSION

Sufficiency of the Evidence

Lopez-Velazquez first asserts that the State did not introduce sufficient evidence to convict him of rape of a child in the first degree. Specifically, Lopez-Velazquez contends that there is insufficient evidence to prove that a rape occurred between September 19, 2013, and September 18, 2014.

Though the first amended information described the charging period as "on or about the period between September 19, 2013 and September 18, 2014," the final to-convict instruction did not include the "on or about the period" language.

The court instructed the jury that to convict Lopez-Velazquez of child rape in the first degree, each of the following elements must be proven beyond a reasonable doubt:

> (1) That between September 19, 2013 and September 18, 2014, on an occasion separate and distinct from those acts alleged in Count 2, the defendant had sexual intercourse with D.M.;
> (2) That D.M. was less than twelve years old at the time of the sexual intercourse and was not married to the defendant and was not in a state registered domestic partnership with the defendant;
> (3) That D.M. was at least twenty-four months younger than the defendant; and
> (4) That this act occurred in the State of Washington.

When the charging period uses "on or about" or similar language, the proof is not limited to the delineated time period. State v. Yallup, 3 Wn. App. 2d 546, 553, 416 P.3d 1250 (2018). However, under the "law of the case" doctrine, where additional elements are included in a jury instruction on the elements of the crime and not objected to, the State

is required to prove those elements even if they are not included in the statute. State v. Johnson, 188 Wn.2d 742, 754, 399 P.3d 507 (2017). However, "[t]he jury is permitted to infer from one fact the existence of another essential to guilt, if reason and experience support the inference." State v. Jackson, 112 Wn.2d 867, 875, 774 P.2d 1211 (1989). For a trier of fact to draw inferences from proven circumstances, the inferences must be "rationally related" to the proven facts. Id.

Lopez-Velazquez relies on D.M.'s testimony to argue that the State did not present evidence that the charged act occurred when D.M. was four years old.[2] And because the State did not prove that the charged act occurred at this time, he argues, the conviction should be reversed and dismissed.

We review a challenge to the sufficiency of the evidence presented during trial de novo. State v. Harris, 199 Wn. App. 137, 146, 398 P.3d 1229 (2017). Evidence is sufficient to support a conviction if, after viewing all the evidence in the light most favorable to the State, any rational juror could have found the elements of the crime proved beyond a reasonable doubt. State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). Our review is "highly deferential to the jury's decision." State v. Davis, 182

---

[2] Though the State argued in closing that it was relying on D.M.'s "description of that first time as the basis for Count 1," that does not change our sufficiency of evidence analysis. When evidence indicates that several distinct criminal acts have been committed, but defendant is charged with only one count of criminal conduct, jury unanimity must be protected by the State, at its discretion, either electing the act upon which it will rely for conviction, or, alternatively, instruct the jury that all 12 jurors must agree that the same underlying criminal act has been proved beyond a reasonable doubt. State v. Carson, 184 Wn.2d 207, 217, 357 P.3d 1064 (2015). In the instant case, the State chose to provide the jury with a unanimity instruction while also electing to argue a distinct act supported Count 1. The jury was free to reject the State's argument at closing as to what evidence supported Count 1 while still unanimously agreeing as to what evidence supported a conviction for that count. The court instructed the jury that the lawyer's statements were not evidence, that the evidence is the testimony and exhibits, that the law is contained in the court's instructions, and that the jury was to disregard any remark, statement, or argument that is not supported by the evidence or the law as instructed.

Wn.2d 222, 227, 340 P.3d 820 (2014). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We defer to the jury on issues of conflicting testimony, credibility of the witnesses, and the persuasiveness of the evidence. State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.2d 970 (2004). "In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." State v. Hoffman, 181 Wn.2d 102, 106, 330 P.3d 182 (2014), abrogated on other grounds by State v. Roberts, 5 Wn.3d 222, 572 P.3d 1191 (2025). In considering the sufficiency of the evidence, circumstantial and direct evidence carry equal evidentiary weight. State v. Scanlan, 193 Wn.2d 753, 770, 445 P.3d 960 (2019). As such, circumstantial evidence may be used to establish any element of a crime. State v. Garcia, 20 Wn. App. 401, 405, 579 P.2d 1034 (1978).

The task of evaluating conflicting testimony and weighing the credibility of witnesses is the exclusive province of the jury. State v. Avington, 2 Wn.3d 245, 263, 536 P.3d 161 (2023). Therefore, the jury is free to accept or reject, in whole or in part, the testimony of any witness. Moen v. Chestnut, 9 Wn.2d 93, 102, 113 P.2d 1030 (1941).

D.M. testified that she went to Lopez-Velazquez's apartment at least once a week and often stayed overnight. D.M. also testified that Lopez-Velazquez frequently touched her in a way that made her uncomfortable. Then, D.M. specifically testified that Lopez-Velazquez's fingers touched both the inside and outside of her vagina. D.M. testified that this same conduct "happened, like, every time." She recalled that the inappropriate touching would happen every time she was at Lopez-Velazquez's

apartment, sometimes more than once a visit.

Lopez-Velazquez correctly highlights that D.M. testified that when she was older than two or three, Lopez-Velazquez did not touch her in a way that made her feel uncomfortable. But she later stated that she did not know the exact timeline of when Lopez-Velazquez was in her life. The State refreshed D.M.'s memory with a transcript from an interview she gave in 2020. After reviewing the transcript, D.M. testified as follows:

[State:] And, [D.M.], did that kind of refresh your memory as to kind of the timeline of when [Lopez-Velazquez] was in your life?

[D.M.:] About, yeah.

[State:] And what was that timeline?

[D.M.:] It said, around 4 to 5.

[State:] And do you remember talking … about that?

[D.M.:] Yeah.

[State:] And that would have been when you were about 4 to 5 years old when [Lopez-Velazquez] was in your life?

[D.M.:] Yeah. But I think it was, like, sooner too.

[State:] And by that, do you mean that you met him before you were 4?

[D.M.:] Yeah.

[State:] And then would you have stopped seeing him around 4 or 5 years old?

[D.M.:] Yeah.

[State:] So, [D.M.], earlier, I think you testified that you thought you were around 2 or 3 when you stopped seeing [Lopez-Velazquez]. Based on your review of that chance transcript, did that kind of refresh your memory?

[D.M.:] I thought that's, like, when I started seeing him.

[State:] Okay. Just so I'm clear, it sounds like you started seeing [Lopez-Velazquez], as far as you can remember, when you were 2 or 3 years old?

[D.M.:] Yeah.

[State:] And then you stopped seeing [Lopez-Velazquez] around the age of 4 or 5?

[D.M.:] Yeah. That sounds – yeah.

The State's evidence, viewed in the light most favorable to the State, could lead a rational factfinder to conclude that the penetration of D.M.'s vagina occurred on a regular basis when D.M. was with Lopez-Velazquez, which includes when D.M. was four years old. D.M. gave conflicting testimony as to when she stopped seeing Lopez-Velazquez. She testified that she did not see Lopez-Velazquez when she was four years old. She also stated that she did not exactly know the timeline of when Lopez-Velazquez was in her life. However, she did testify that her memory was more vivid when she gave her 2020 interview. And after her memory was refreshed from the transcript of her 2020 interview, she clarified that Lopez-Velazquez was in her life until she was around four or five years old. D.M. even clarified that her earlier testimony about not seeing Lopez-Velazquez when she was older than two to three years old was when she started seeing Lopez-Velazquez.

The jury was free to accept or reject in whole or in part D.M.'s testimony. The evidence is such that a jury <u>could</u> find that Lopez-Velazquez engaged in conduct that constituted rape when D.M. was four years old. A jury could have rejected D.M.'s initial testimony that she did not see Lopez-Velazquez when she was older than two or three and accepted that, after her memory was refreshed, she saw Lopez-Velazquez when

she was four years old and Lopez-Velazquez raped her during that time frame. The court's unanimity instruction ensured that the jury unanimously agreed that the specific act of rape of a child in the first degree was proved.

Sufficient evidence supports Lopez-Velazquez's conviction for child rape in the first degree.

<u>Victim Penalty Assessment</u>

Lopez-Velazquez next contends that the trial court erred in imposing a VPA because he is indigent. As part of Lopez-Velazquez's sentence, he was ordered to pay a mandatory VPA but did not have to pay any non-mandatory legal financial obligations (LFOs).

Pursuant to the new provision of RCW 7.68.035(4), effective July 1, 2023, trial courts shall not impose the VPA on defendants found indigent at the time of sentencing. LAWS OF 2023, ch. 449, § 1. Upon motion by a defendant:

> [T]he court shall waive any crime victim penalty assessment imposed prior to the effective date of this section if:
> …
> (b) [t]he person does not have the ability to pay the penalty assessment. A person does not have the ability to pay if the person is indigent as defined in RCW 10.01.160(3).[3]

RCW 7.68.035(5).

Lopez-Velazquez, citing <u>State v. Ramirez</u>, 191 Wn.2d 732, 426 P.3d 714 (2018),

---

[3] An "indigent" defendant:
(a) Meets the criteria defined in RCW 10.101.010(3) (a) through (c); (b) is homeless or mentally ill as defined in RCW 71.24.025; (c) has household income above 125 percent of the federal poverty guidelines and has recurring basic living costs, as defined in RCW 10.101.010, that render the defendant without the financial ability to pay; or (d) has other compelling circumstances that exist that demonstrate an inability to pay.
RCW 10.01.160(3).

alleges that the trial court's decision to impose a nonmandatory LFO was discretionary and must be reviewed for an abuse of discretion. However, the VPA is a mandatory LFO, so it is not a discretionary decision. RCW 7.68.035. Lopez-Velazquez also relies on Ramirez to argue that the trial court was required to conduct an individualized inquiry into his current and future ability to pay. In Ramirez, the defendant challenged the trial court's failure to make an adequate individualized inquiry into his ability to pay before imposing discretionary LFOs. 191 Wn.2d at 737. It is inapposite.

Lopez-Velazquez also argues that he is indigent and the court only engaged in a "perfunctory oral inquiry" into his financial circumstances. We disagree. RCW 7.68.035 requires that the court waive, upon defendant's motion, a VPA if they are indigent. Lopez-Velazquez made no such motion.

Additionally, for a VPA to be waived, a defendant must be found indigent "at the time of sentencing." RCW 7.68.035(4) (emphasis added). At Lopez-Velazquez's sentencing, defense counsel stated that Lopez-Velazquez is the owner of a painting company that has hired and maintained up to 10 employees. The court inquired into whether this business has been ongoing since Lopez-Velazquez has been on electric home monitoring and defense counsel affirmed but admitted that it is more difficult because his work is not in one place. Regardless, defense counsel stated that Lopez-Velazquez's "employment has been the most stabilizing factor in his life. It's allowed him to support himself and others, including his daughter and family members, including his wife." Accordingly, defense counsel asked the court not to impose any additional nonmandatory LFOs but did not assert that Lopez-Velazquez was indigent and did not ask

10

the VPA to be waived.[4] The trial court did not err in finding, based on this record, that Lopez-Velazquez was not indigent at the time of sentencing.

## CONCLUSION

We affirm.

_Coburn, J._

WE CONCUR:

_Birk, J._

_Mann, J._

---

[4] Lopez-Velazquez relies on his financial declaration submitted with his request to proceed in forma pauperis on appeal. However, the question before us is not whether Lopez-Velazquez may be eligible for post-conviction relief from his LFOs based on facts that were not presented at his sentencing.